### BRADLEY'S FISH COMPANY vs. HORACE L. DUDLEY.

Sundry tenants in common, of whom A is one, may acquire by adverse user, for the benefit of and as appurtenant to the land owned in common, a right of way over land owned by A in severalty.

It is not a sound rule of law that an open and continuous use of a way for fifteen years unexplained, is presumed to be under a claim of right and adverse.

The same significance is not to be given to such a use under all circumstances. The condition of the land, whether it lies open and uncultivated and the passing over it works no injury to the owner, or the opposite, is an important matter to be taken into consideration. So also the relation of the parties.

To lay down any universal and absolute rule of law as to the effect in evidence of particular facts in such a case, is of very doubtful propriety. The force of the evidence is matter of fact for the triers and not of law for the court.

The proof of an adverse use may be circumstantial as well as direct, and it requires no greater amount of evidence than is necessary to prove other facts in civil causes.

Where a fishing place and fishing implements were owned by sundry persons as an unincorporated association, and the different interests were from time to time transferred as personal property, involving frequent changes in the membership of the association, it was held that the adverse use of a way to the fishing place by the successive owners was to be regarded as a continuous use, and that thereby a right of way might be acquired appurtenant to the fishing place and accruing to the benefit of the persons who should be owners at the end of the period of prescription.

TRESPASS ON THE CASE, for the obstruction of a way claimed by the plaintiffs over the land of the defendant; brought to the Court of Common Pleas of New Haven county and tried to the jury, on the general issue with notice, before *Bronson, J.*

On the trial the plaintiffs claimed, and offered evidence to prove, that they were a voluntary association, located in Madison, and owning a fish house, fish place, seine and reel, and other fishing apparatus, at Bradley's fish place, on Madison harbor, and had been engaged in the fishing business there for sixty years, and had been accustomed to use the way described in their declaration, in the manner therein alleged, since the year 1825, and, to some extent, since they first engaged in business, and from a time beyond the memory of the oldest witness present ; and that they had a right to use the way perpetually, by prescription, or local custom, or both.

It was conceded that the company had, during all the time of its existence, been made up of a succession of persons, without corporate powers, as from time to time the interest of the members changed by sale, transfer or distribution, the interests being treated as personal estate ; that the interests of the owners varied from time to time in amount, as some went out and others came in, and sales of different fractional interests were made, some members owning at certain times as high as a quarter interest, and others as low as a sixteenth interest; that five persons started the business, all of whom were now dead, and whose interests were now owned by seven different parties ; that at first Ambrose Dudley, of Madison, had an interest in the company, and continued to hold that interest up to the time of his decease in 1835, and during the whole period of his ownership was an active member of the company; that during all that period and until his death he owned and occupied the land on which the right of way is claimed by the plaintiffs, and used the way to cart fish on to his own land ; that Gilbert B. Dudley, the son of Ambrose Dudley, upon the death of Ambrose, inherited his father's interest in the company, as well as his father's interest in the land over which the right of way is claimed, and became, immediately upon his father's death, an

active member of the company, and went immediately into the occupation of the land, and continued his occupation and ownership of the land, and of his interest in the company, until his own death, in 1865, and used the way, as his father did, to cart fish upon the land over which the way passed; that upon the death of Gilbert B. Dudley, the present defendant, his brother, became the owner in fee and the occupant of the land, and has so continued to the present time; that the defendant has never been an owner or a member of the company, and from the time that he came into the possession and ownership of the land has forbidden any travel by the plaintiffs over the land; and that if the plaintiffs have used the way over the land since his ownership thereof, it has been done contrary to his will and against his remonstrances.

The defendant claimed, and offered evidence to prove, that for many years after the company commenced business, their travel for fish was not over any part of the Dudley land, but over another and different route, diverging, when it came to the Dudley land, over and through the Meigs land, so called, to the highway, (called the Meigs route,) and that no fish were carried over the Dudley land prior to the year 1825, and that about that time, owing to some change in the Meigs route, the fish and the travel of the company came over the Dudley land, to a considerable extent to the highway, and that that route had been since used, as the defendant claimed to have proved, by the license and permission of Ambrose Dudley, while he was both the owner of the land and an active member of the company, and after him by Gilbert B. Dudley, while he was owner of the land and member of the company, for carting the greater part of the fish to the highway, until the use was stopped and all license to use the land as a fish route revoked by the defendant, immediately after he came into possession of the land.

The plaintiffs, in support of their declaration, offered Talcott Bradley as a witness, and proposed to prove by him " a general use of the Dudley route by all parties, at all times and for all purposes, by the public." To the admission of this evidence the defendant objected, and the court excluded the same.

The defendant offered evidence to prove that Gilbert B. Dudley owned, for from twelve to fifteen years, mostly during the same time that he owned in the Bradley Fish Company, an interest in another fish company called the "Divers Fish Company," whose place of fishing was adjacent to Bradley's fishing place, and that during the period of his ownership in the Divers company, he permitted the fish caught by that company to be carted over other lands of his, to a point in the way in question where the same strikes the land in question, and thence over that part of the way which passes over the Dudley land to the highway; and that upon his ceasing to be a member of the Divers company he prohibited that company from the further use of the way from the Divers fishing place to the highway, but continued to permit and license Bradley's Fish Company to use the way in question, as they theretofore had done. To this evidence the plaintiffs objected, but the court admitted it.

The plaintiffs asked the court to charge the jury " that a continuous and open use of a way for fifteen years, unexplained, is presumed to be under a claim of right and adverse." The court refused to give the instruction requested, but told the jury that " the doctrine of adverse possession is to be taken strictly; that such a possession is not to be made out by inference, but by clear and positive proof; and that every presumption is in favor of possession and use in subordination to the title of the true owner."

The court further charged the jury, that if they should find that Ambrose Dudley owned the land over which the way was claimed, from the earliest commencement of Bradley's Fish Company to the time of his death in 1835, and that he was also during the same period an owner in and an active member of the fish company; and if they should also find that Gilbert B. Dudley, his son, succeeded him in ownership both of the land and of the share of the fish company, then that, as matter of law, the use of the plaintiffs could not be adverse, and that they should return a verdict accordingly.

The jury having returned a verdict for the defendant, the plaintiffs moved for a new trial.

*Baldwin,* in support of the motion.

1.   The testimony of Bradley was proper to show the improbability that the plaintiffs' right of way stopped at a point where a way began which was used by the public generally. It also went to show that the plaintiffs, as a part of the public, were rightfully using the Dudley route when the acts complained of were committed.

2.   The only purpose and effect of introducing the evidence as to the Divers fishing company, could have been to induce the jury to infer that Gilbert B. Dudley licensed the plaintiffs to use the way in suit, and did so because he was a member of the plaintiff company, from the fact that he licensed a similar use of a way, including a part of that in controversy, by the Divers company, while he was a member of that, and no longer.   But a collateral transaction of this character afforded no reasonable or legal ground of inference as to the acts or motives of Gilbert B. Dudley in relation to the plaintiffs.

3.   The charge requested was correct, and adapted to the plaintiffs' evidence.   Washb. on Easements, chap. 1, § 31; *Hammond* v. *Zehner,* 21 N. York, 118.   The charge as given confounded the law as to the acquisition of the fee of lands by a disseizor with that as to title by prescription.   An adverse possession must be exclusive of the rightful owner, but a right of way may be acquired over land over which the rightful owner is also uninterruptedly in the habit of passing. In case of a claim by fifteen years adverse user, the presumption on which all prescriptive titles stand is that the user was *not* " in subordination to the title of the true owner."   The court then proceeded to take the case away from the jury entirely, by saying that, as matter of law on the conceded facts, the user of the · plaintiffs could not be adverse.   The conceded facts were that during the plaintiffs' user of the way, the owners of the fee in the Dudley lands were members of the plaintiff company, and used that part of the way lying below their lands for carting fish to their land, at the same time that the plaintiffs were using it in carting fish to the

highway.  Even were the plaintiffs a copartnership, they might, as owners of the fish place and fish house, acquire a right by adverse user to a way over the land of one of the partners, as appurtenant to their real estate.  The doctrine of unity of title only applies where the title to the dominant and servient tenements are of the same nature and extent, and are held by the same hand.  It may be that an individual partner cannot prescribe against the partnership, because he has a right to use every part of the partnership lands; but a partnership have not the right to use any part of a partner's individual lands, and if some of the partners do enter without leave on the lands of another partner, it is a trespass, for which he can sue them.  *Hickox* v. *Parmelee*, 21 Conn., 97; *Barnes* v. *Haynes*, 13 Gray, 188.  But the plaintiff association is a body distinct from its members, and may prescribe against them as freely as if it were a corporation.  No individual member could pass a title to its personal estate, or convey his interest in its real estate, as distinct from his interest in its stock.  The act of 1864 did not create these voluntary associations; it recognized them as existing, and owning property, and owing debts.  They may own at least the equitable interest in real estate, and in any easements appurtenant thereto.  Here their ownership of the fish place and fish house was undisputed.  A grant of this real estate, and of this way as appurtenant thereto, may have been made to a trustee for this company at the time of its formation; or there may have been such a grant of the fish place and fish house, and of the way up to the Dudley land, and the right of way from that point to the highway may have been acquired by prescription, or by a local custom in favor of the owners and occupants of Bradley's fish place.  So a member of a voluntary association can sell personal property to the association, and sell and convey real estate, if not to the association, certainly to a third party in trust for it.  Ambrose Dudley might have granted a right of way to the plaintiffs, or for their use; and if he could grant, they can prescribe.  All these questions are questions of fact, on which we had a right to have the opinion of the jury.  *Putnam* v. *Bowker*, 11

Cush., 545 ; *Green* v. *Putnam*, 8 Cush., 21 ; *Am. Bible Society* v. *Wetmore*, 17 Conn., 187.

*R. D. Smith* and *Wright*, contra.

1.  It is found that the plaintiffs' association has been made up of a succession of persons without corporate powers, owning different shares of interest as from time to time the interest of the members changed by sale, transfer or distribution *as personal estate*; that five persons started the fishing business, all of whom are now dead; and that the whole interest is now owned by seven persons. It does not appear that any of the seven persons have owned for fifteen years, and certainly a *majority* have not. Now they cannot prescribe for those who have not owned fifteen years. And they must prescribe for the whole seven or not at all in this suit.

2.  It is found that Ambrose Dudley, and after him his son, Gilbert B. Dudley, successively owned the premises over which the right of way is claimed, and were active members of the fish company during all that time. So there can be no adverse possession. Neither of them could have sustained a suit against the fish company during all this period, for they were jointly concerned with the others in all these acts; certainly not till they revoked the license to pass, which they never did.

3.  The evidence with regard to the Divers fish company was relevant and important in showing that Gilbert B. Dudley, while he owned the premises over which the right of way is claimed, *permitted* and *licensed* the fish company to pass over his land, he being at the same time an active member of the company.  *Olmsted* v. *Hoyt*, 11 Conn., 376 ; *Smith* v. *Vincent*, 15 id., 1, 11.

4.  The charge of the judge was right. 1 Swift Dig., 160; 2 Washb. Real Prop., chap. 4, § 20 ; 2 Greenl. Ev., § 539; *Hickox* v. *Parmelee*, 21 Conn., 86 ; *Huntington* v. *Whaley*, 29 id., 391, 398 ; *School District* v. *Lynch*, 33 id., 333 ; *Sargent* v. *Ballard*, 9 Pick., 251, 255.

5.  But even if the defendant is wrong upon all his other points, no new trial can be granted, as it is clear from the

admissions of the parties, apparent on the motion, that the plaintiffs cannot succeed. A prescription presumes a grant of at least fifteen years prior to the suit, and a grant presumes the existence of persons capable of taking; but the plaintiffs have not been in existence yet for three years.

SEYMOUR, J  The plaintiffs are a voluntary association and sue as such by virtue of a recent statute. The action is for obstructing an alleged right of way. In the first count of the declaration the way is described as being appurtenant to Bradley's fish place and as leading from that place over the defendant's land to a public highway. In the motion for a new trial it appears that the plaintiffs offered evidence to show that they owned a fish house, fish place, seine, &c., at Bradley's fish place, and that they had a right to use the way by prescription or local custom or both.

It was conceded that the association had been made up of a succession of persons without corporate powers; that the interest of these persons varied in amount from time to time; that all the five persons who started the business are dead; and that the persons who owned the land over which the way is claimed down to 1865 were themselves active members of the Bradley Fish Company and used the way to cart fish to their own land. The defendant became owner of the land in 1865, and has never been a member of the fish company, and has always since 1865 forbidden the plaintiffs the use of the alleged way.

Upon the conceded facts of which the foregoing is a synopsis, the Court of Common Pleas for New Haven county, before which the case was tried, charged the jury that as matter of law the use of the plaintiffs could not be adverse.

The defendant insists, in the first place, that upon the conceded facts there was no such continuity of user by the individuals who have successively been members of the plaintiff association as to be evidence of a prescriptive right in the association. There is much force in this objection if the way claimed is to be treated as a way in gross or mere personal right, but it appears from the declaration and from the proof

offered by the plaintiffs, as the same is briefly stated in the motion, that the way was claimed as appurtenant to the Bradley fish place, of which place the plaintiffs claim to be owners, or to have an interest in it as owners of a fish house there.

We suppose it is clear that the user of successive owners of the Bradley fish place may be connected so as to be in law continuous, however frequent the changes of ownership. All that is required for this purpose is that the successive owners should be privies in estate. By user of owners thus succeeding each other a right of way may be acquired which will become appurtenant to the estate, accruing to those who are the owners at the end of the period of prescription.

The defendant insists secondly, that the user upon the conceded facts could not be adverse, because the Dudleys, being owners of the premises over which the way is claimed to be, were themselves during the entire period of the user active members of the plaintiff association. The question thus raised is of considerable interest and one which we do not find discussed in the books. · It is agreed on all hands that in general one cannot have and cannot acquire a right of way or other easement in his own land. Ownership of the fee merges all easements. No one can acquire rights against himself, nor derive rights from himself. The defendant insists that it follows from these elementary truths that the fish company, while the Dudleys were members of it, could not have, and could not acquire by user or otherwise, a right of way over the land of the Dudleys.

The point thus raised resolves itself into this general question, whether one's own land may be subjected to an easement in favor of himself and another as joint owners of other lands. That is, whether a right of way appurtenant to the premises of *A* and *B*, may exist over the lands of *A*.

We think it clear, firstly, that such an easement may exist. If a way has become appurtenant to an estate, and the servient estate becomes the property of one who is also a joint owner with others of the dominant estate, the way is not extinguished. The manifest wrong which such a merger

would do to the owners of the dominant estate is a sufficient argument against the extinguishment, and the technical doctrine of merger carried to its fullest extent would extinguish only the right of him who has an interest in both estates. The right of the other joint owners would remain unimpaired, and thus the way would be preserved as appurtenant to the property, and when by sale or otherwise the owner of the servient estate ceases to be joint owner in the dominant estate, the temporary and partial merger would cease and be as though it had never been.

We think it clear, secondly, that an easement over $A$'s land in favor of $A$ and $B$, co-tenants of other lands, can be acquired by grant. If $A$, the owner of blackacre, grants to $B$, who is joint owner with $A$ of adjoining premises, a way over blackacre to be used by $B$ and his heirs and assigns in common with $A$ himself, and his heirs and assigns, as appurtenant to their common property, we do not see why such grant would not be effectual to subject blackacre to the easement.

Thirdly. If such an easement may be acquired by grant it follows of course that it may be acquired by prescription, namely, by such user as shall be evidence of a grant. Under these circumstances it is true that the use ought, more than in ordinary cases, to appear to be under claim of right. The interest of the Dudleys, in the case before us, in the business of their associates, might lead them to permit a passage over their individual lands, and on the question of fact a jury might think the use should be referred to such permission rather than to a claim of right. But in point of law such user *may be adverse*. It may have been under the claim of a right of way appurtenant to the common property, which claim may have been clearly and distinctly asserted and have been unequivocally recognized as a just claim by the Dudleys. The question whether the use was or was not thus adverse, was for the consideration of the jury as a question of fact under proper instructions from the court.

A question very similar to the one now under consideration arose in the case of *Hickox* v. *Parmelee*, 21 Conn., 86, and it

was there held that the Cogswells might by user impose a servitude upon their individual property at the outlet of Waramaug Lake in favor of several mill-sites on the stream below, one of which mill sites was owned by the Cogswells themselves. In that case the grantee of the Cogswell mill-site was held entitled, in common with the other mill owners, to the easement thus imposed. The arguments in that case were very similar to those urged by the defendant in this.

Several other questions were discussed at the trial, most of which are of no general interest and probably will not again arise, and on which we express no opinion. One point however deserves careful consideration.

The plaintiffs asked the court to charge the jury " that an open and continuous use of a way for fifteen years unexplained, is presumed to be under a claim of right and adverse." Washburn on Easements, chap. 1, sec. 31, is cited in support of this request, and the law is there stated in substantial accordance with the plaintiffs' claim ; but we think a jury might in many cases be misled by a charge in the words thus stated. The instruction thus asked for directs attention to the mere fact of open and continuous use, and gives to that use the same significance under all circumstances, whereas it is obvious that the circumstances under which the use takes place may often have a controlling effect. Thus the condition of the land over which a way is used is often a very important matter to be taken into consideration in deciding whether the use is or is not adverse. Where land lies open to common and is uncultivated and passing over it works no injury to the owner, the use might naturally be referred to consent, sufferance or implied license, whereas if the land were valuable and cultivated and the passing over it highly injurious to the owner, his acquiescence in such passing over it would be very significant. The relation in which the parties stand to each other may also often serve to indicate the character of the use ; as where near relatives occupy adjoining premises and use each other's passways, it may be, openly and continuously during a long life, such use would naturally be referred to consent and indulgence.

In the case now under consideration the fact that the owner of the land over which the way is claimed was himself a member of the plaintiff association and largely interested in its business, might be, and we think is, an important matter to be weighed in deciding whether the use was adverse or permissive.

The circumstances of this class of cases are so varied, and it is so important that every circumstance should be taken into consideration, that we doubt the propriety of laying down universal and absolute rules of law as to the effect in evidence of particular facts. The party claiming title to an easement by user must of course satisfy the triers that the use was under claim of right and acquiesced in as such, and no doubt the fact of fifteen years open and continuous use is important evidence, and may in many cases, under the circumstances of the use, carry conviction to the mind of the trier that it was under claim of right; yet we think the force of the evidence is matter of fact, and that the law does not give to it any peculiar effect, and that we ought not to grant a new trial because the court below refused to charge the jury in the manner requested by the plaintiffs.

The court however not only refused the plaintiffs' request, but on the contrary instructed the jury as follows :—" The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession and use in subordination to the title of the true owner."

The rule has been laid down in these words where title to real estate is claimed by disseizin under the statute of limitations, and we have no occasion to call in question its correctness as applicable to such cases. But in respect to the acquisition of easements by user we have already expressed our opinion against the propriety of attempting to lay down universal and absolute rules of law as to the effect in evidence of particular facts.

Whether long continued use of an easement is adverse or is in subordination to the title of the true owner is, we have already said, a matter of fact to be decided like other facts

upon evidence and upon the circumstances of each particular case. The burden of proof to show that it is adverse is on the party claiming rights under the use. We however see no reason why the proof may not be circumstantial as well as direct, nor any reason for requiring in regard to it any greater amount of evidence than is necessary to prove other facts in civil causes.

A new trial is advised.

In this opinion the other judges concurred.