ROBERT JAY SCHULZ ET AL *v.* HENRY T. SYVERTSEN ET AL.
(14206)
(14207)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and F.X. HENNESSY, Js.

Argued March 27—decision released May 28, 1991

*K. Wynne Bohonnon,* for the appellant in the first appeal (named defendant).

*Gordon A. Evans,* with whom, on the brief, was *Richard H. Lamere,* for the appellants in the second appeal, appellees in the first appeal (plaintiffs).

*Joseph Leibowicz,* with whom, on the brief, was *Alan S. Schwartz,* for the appellees in the second appeal (defendants).

COVELLO, J. This is an action to quiet title with respect to a disputed beach accessway that may cross the defendants' real property on Old Sachem's Head Road, Guilford. The trial court concluded that some of the plaintiffs had acquired an easement by prescription over the defendants' land and that

others had not. The issues presented on appeal are: (1) whether the trial court committed harmful error in considering the applicability of the Marketable Title Act, General Statutes § 47-33b et seq.; (2) whether the prescriptive use of the accessway was adverse under a claim of right; (3) whether the trial court applied the correct standard of proof; and (4) whether the trial court adequately described the easement. We affirm.

The trial court found that the plaintiffs, Robert Jay Schulz and Virginia L. Schulz (Schulzes), John J. Amodeo and Pamela J. Amodeo (Amodeos), William B. Bell and Sue Ann Bell (Bells), are all owners of various parcels in the Great Harbor section of Guilford. The defendants, Henry T. Syvertsen, Karen A. Syvertsen and Christopher Syvertsen (Syvertsens), own land to the east of the plaintiffs' land. Prior to 1941, all of this property belonged to Charles E. Benton. During the spring and summer of 1941, Benton conveyed portions of this land to the predecessors in title of the present plaintiffs. In each instance, in addition to the fee title, Benton granted a right-of-way five feet in width over the land he retained, to Great Harbor for the purpose of passing to and from the water together with the right to use the beach in common with others. The description of the northerly or beach end of the right-of-way varied from deed to deed. It is these variances in description that are the basis of the controversy between the parties. The deed from Benton to the Syvertsens' predecessor in title is dated August 16, 1941 and does not mention any easement as encumbering the property. All the deeds that described the right-of-way for the first time predated August 16, 1941. The trial court further found that in 1985, the Syvertsens erected a chain link fence along the northerly boundary of the right-of-way that "prevents the Schulzes from following their customary straight path

on to the big rock and forces them to walk to the west over uneven boulders to the sandy portion of the cove." This lawsuit followed.

As applied to this case and subject to certain exceptions, the Marketable Title Act, General Statutes § 47-33b et seq., declares null and void any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title.[1]

---

[1] General Statutes § 47-33d provides in part: "INTEREST TO WHICH TITLE IS SUBJECT. Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the

In its memorandum of decision, the trial court impliedly concluded that the Marketable Title Act extinguished any easements described in the various deeds to the present parties and their predecessors in title that crossed the Syvertsens' land.[2] The trial court reasoned that since the Syvertsens' "root of title"[3] and the forty year chain of title thereafter were silent as to any encumbering easement; and since this "root of

chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest . . . ."

General Statutes § 47-33e provides: "PRIOR INTERESTS VOID. Subject to the matters stated in section 47-33d, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether those interests, claims or charges are asserted by a person sui juris or under a disability, whether that person is within or without the state, whether that person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

General Statutes § 47-33f (a) provides in part: "Any person claiming an interest of any kind in land may preserve and keep effective that interest by recording, during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim."

[2] The trial court never specifically concluded that the deeded rights-of-way had been extinguished by the Marketable Title Act. The discussion contained in the memorandum of decision, however, makes it clear that the trial court believed that any easement could only have come into being as the result of an adverse use of the defendants' property, a defined exception to the Marketable Title Act's forty year rule. See General Statutes § 47-33d, footnote 4, infra.

[3] General Statutes § 47-33b (e) provides: " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it is recorded."

title" postdated all of the deeds that created the disputed easement, General Statutes §§ 47-33e and 47-33f of the Marketable Title Act rendered the easement null and void.

The trial court further concluded, however, that an exception to the operation of § 47-33e was an adverse use that postdated the effective date of the root of title.[4] The trial court found that the Amodeos and the Bells had not proved an adverse use. The Schulzes, however, had proven by clear and convincing evidence that their predecessor in title, a Reverend Kurt and her family, had, after the date of the Syvertsens' root of title, "adversely used as a right of way a straight route over the defendants' property for a period of more than fifteen years." This being the case, the trial court enjoined the Syvertsens "from interfering with the Schulzes' use of that right of way and of the big rock for the established uses." The trial court further rendered a declara-

---

[4] General Statutes § 47-33d provides: "INTERESTS TO WHICH TITLE IS SUBJECT. Such marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title are not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest; (2) all interests preserved by the recording of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 47-33f; (3) the rights of any person arising from a period of adverse possession or use, which was in whole or in part subsequent to the effective date of the root of title; (4) any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started; provided such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 47-33e; (5) the exceptions stated in section 47-33h as to rights of reversioners in leases, as to apparent easements and interests in the nature of easements, and as to interests of the United States, this state and political subdivisions thereof, public service companies and natural gas companies."

tory judgment that: "there are, appurtenant to the Schulzes' property, a prescriptive right of way five feet in width extending straight out across the defendants' property to Great Harbor and also a prescriptive easement to use the top, front and cove sides of the rock formation at the eastern end of the cove, as are more fully described above." Both the plaintiffs and the Syvertsens appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

## I

In their appeal, the plaintiffs argue that the trial court improperly applied the Marketable Title Act, General Statutes § 47-33b et seq., to the procedural circumstances of this case for the following reasons: On the morning of trial, the trial court sustained the plaintiffs' objection to the Syvertsens' attempt to interpose a special defense, filed in court the previous day, that the plaintiffs had failed to record a notice extending the term of their deeded easement as required by General Statutes § 47-33f of the Marketable Title Act.[5] This was the first time that the plaintiffs become aware that the Syvertsens would be relying on the act's provisions. In sustaining the plaintiff's objection, the trial court, mindful of the Practice Book's requirement that claims grounded upon a statute are to be specifically identified in the pleadings,[6] stated: "I think, that to move for permission to add a new statutory issue the day

[5] General Statutes 47-33f provides: "(a) Any person claiming an interest of any kind in land may preserve and keep effective that interest by recording, during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. . . ."

[6] Practice Book § 109A (a) states: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number."

before trial . . . creates an unfair prejudice to their [the plaintiffs'] ability to present the case, and it will go forward on the pleadings that are of record."

Thereafter, during trial, the plaintiffs' counsel repeatedly objected to the reference in testimony to the "root of title"; see footnote 4, supra; by the Syvertsens' expert as being an oblique reference to the Syvertsens' unpleaded special defense under the Marketable Title Act. The trial court stated that it would not admit the evidence for the purpose of establishing any statutory special defenses but solely for the purpose of "why he did what he did as far as the title search."

In view of this procedural history, the plaintiffs argue and the Syvertsens agree that the trial court misled the plaintiffs by thereafter considering evidence going to the Marketable Title Act defense in rendering its decision when such evidence had not been admitted for that purpose. The Syvertsens argue, however, that the error was harmless since the trial court thereafter furnished the plaintiffs a full opportunity to demonstrate that the Marketable Title Act was either inapplicable in toto or because the plaintiffs qualified for one of the act's exceptions. We agree.

"The correctness of a judgment of a [trial court] . . . is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 7, 513 A.2d 1218 (1986). The Syvertsens claim that the plaintiffs failed to prove at the reargument hearing, their assertion that there were "several exceptions to the Marketable Title Act that would have applied." The plaintiffs respond that, given an opportunity to do so, they would have presented additional testimony as to physical conditions within the right-of-way[7] that would have served to

---

[7] General Statutes § 47-33h provides: "Sections 47-33b to 47-33*l*, inclusive, shall not be applied to . . . extinguish any easement . . . if the

establish its existence and that would have exempted the easement from the forty year recording requirement contained in § 47-33f. We conclude that the plaintiffs were given such an opportunity and failed to demonstrate in what way they could have countered the effect of these clearly applicable statutes.

The record discloses that the plaintiffs requested and were granted a rehearing on the applicability of the Marketable Title Act. The trial court conducted the hearing more than two months later. The plaintiffs made no offer of proof with respect to evidence already before the court or additional evidence they could present that would have militated against the operation of these statutes and the extinguishment of the portion of the deeded right-of-way that crossed the Syvertsens' land. The plaintiffs argued that they would have explored further the applicability of the various exceptions to the Marketable Title Act as set forth in §§ 47-33d and 47-33h. See footnotes 4 and 7, supra. Despite the trial court's repeated requests, the plaintiffs were unable to identify specifically which statutory exception applied or what additional evidence they could add to the extensive testimonial and physical record already placed before the court, evidence that had produced findings in favor of some of the plaintiffs that one of the exceptions to 47-33d, i.e., a prescriptive easement, in fact existed. Because the plaintiffs made no legal argument nor offered any additional evidence that the Marketable Title Act did not apply, we agree with the Syvertsens that the plaintiffs have not shown how the trial court's initial ruling excluding the statute and its subsequent reliance on the statute in its decision, has operated to their prejudice.

---

existence of such easement or interest is evidenced by the location . . . upon . . . the land . . . of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, hole, tower or other physical facility . . . ."

## II

In their appeal of the trial court's determination that the Schulzes hold a right-of-way or easement by prescription, the Syvertsens first claim that the Schulzes did not establish that their use of the right-of-way was "under a claim of right." Specifically, they argue that the Kurt family used the pathway straight to the beach under the assumption that they were using the right-of-way described in their deed. Because the Kurts thought they were using what was set out to them by deed, the Syvertsens argue they could not have the requisite intent to be acting "under a claim of right" and, therefore, their possession was not adverse. This is not the case.

"The fact that the use began as a result of a grant . . . instead of militating against the adverse character of the use only emphasizes it." *Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 247, 96 A. 944 (1916). "This is true notwithstanding the fact that the adverse possessor acted under an honest belief that he was not assuming a possession to which he was not legally entitled, and that that belief ultimately proves to have been a mistaken one. . . . It was immaterial that that intent was not wrongfully motivated, but sprang from an honest, even though mistaken, belief as to the land embraced in their deed of acquisition." *Loewenberg* v. *Wallace,* 151 Conn. 355, 357-58, 197 A.2d 634 (1964). "Our rule, in this respect, appears to be in accord with that '[i]n a growing number of jurisdictions.' Note, 80 A.L.R.2d 1171, 1183. Indeed, any other rule would frequently limit the acquisition of title by adverse possession to those who 'deliberately set out to steal' the land of another. Id., 1174." Id., 358.

## III

The Syvertsens next claim that the trial court applied the wrong standard of proof in concluding that the

Schulzes had acquired an easement by prescription over their land. In its memorandum of decision, the trial court stated: "[A] party asserting a right-of-way by adverse possession must prove the claim only by a preponderance of the evidence and not by clear and convincing proof." Having set forth its findings, the trial court then concluded: "The court finds that all of the elements required by [a prescriptive easement] were proved by the Schulzes to the requisite standard of proof." The trial court further stated: "The Schulzes have also proved the establishment appurtenant to their property of a prescriptive right to use the top and outcroppings of the big rock. The evidence was clear and convincing that the requirements . . . were met as to those areas . . . ." The Syvertsens now argue that the trial court inferred that, at least as to a portion of the easement, the level of proof rose only to a fair preponderance of the evidence and that clear and convincing evidence was required to establish the prescriptive easement. We do not agree.

" 'The doctrine of adverse possession is to be taken strictly. [Such a] possession is not to be made out by inference, but by clear and positive proof.' *Huntington* v. *Whaley,* 29 Conn. 391 [398 (1860)]." *Robinson* v. *Myers,* 156 Conn. 517, 516, 244 A.2d 385 (1968). "Clear and positive proof" embodies the same substantive standard as "clear and convincing proof." *Wildwood Associates, Ltd.* v. *Esposito,* 211 Conn. 36, 42, 557 A.2d 1241 (1989).

On the other hand, with respect to a claim to a prescriptive easement, "[a]ll that is required is a showing by a fair preponderance of the evidence that the use was adverse." *Reynolds* v. *Soffer,* 190 Conn. 184, 188, 459 A.2d 1027 (1983). "We . . . see no reason why the proof may not be circumstantial as well as direct, nor any reason for requiring in regard to it any

greater amount of evidence than is necessary to prove other facts in civil causes." *Bradley Fish Co.* v. *Dudley,* 37 Conn. 136, 148 (1870). The reason for the disparate levels of proof in two causes of action having virtually identical elements,[8] is that title in the former becomes absolute in the adverse user while in the latter, the adverse user acquires only the right to pass and repass over the prescriptive easement, a much less onerous burden on the property. We conclude that the trial court used the correct standard of proof.

## IV

The Syvertsens finally claim that the trial court failed to describe adequately the right-of-way that it set out to the Schulzes. Specifically, the trial court concluded that "[t]he Schulzes have proven a prescriptive right-of-way extending in a five foot strip along the northwestern boundary of the Amodeo property straight out across the defendants' property to the end of the big rock at its last point before the waters of Great Harbor. The Schulzes have also proved the establishment appurtenant to their property of a prescriptive right to use the top and outcroppings of the big rock . . . the court finds the area subject to this easement to be the rocky top, front (the side facing Great Harbor) and westerly side (facing the cove in front of the Amodeo and Bell properties) of the big rock."

"A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty."

[8] "The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right. . . .

"To acquire a right of way by prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 463, 338 A.2d 470 (1973).

*Kaiko* v. *Dolinger,* 184 Conn. 509, 511, 440 A.2d 198, (1981). The Syvertsens argue that the trial court's textual description does not describe the easement with reasonable certainty and therefore the trial court's ultimate conclusions are flawed.

In response to a motion for articulation in which the Syvertsens asked for the bounds of the easement found by the trial court, the trial court responded: "[T]he [plaintiffs and defendants] . . . have agreed to present the court with a survey, topographical map, photograph or other means by which to indicate graphically the boundaries of the areas described in the memorandum of decision in order to achieve greater clarity in describing those areas to which the court has found the Schulzes have a right of use established by prescription. The court will articulate its ruling by translating its verbal description on to a suitable survey or other graphic representation of the area as soon as counsel furnish that material." To date, no one has furnished the trial court with such a document. The parties having failed to do what was agreed to be done, we conclude that any deficiency in the particularity of the description is deemed to have been waived by the defendants.

The judgment is affirmed.

In this opinion the other justices concurred.