[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding arises out of a certain disputed piece or parcel of land which, with some poetic license, might be considered triangular in shape, which is demonstrated as a shaded area abutting and contiguous to the northerly boundary of Lot 44 as shown and designed on a certain map entitled "Map prepared for Joseph and Elizabeth Miklos Danbury, Connecticut Scale: 1"=20' Total Area: 18,659 S.F. Zone: RA-40 Date: Jan. 22, 1992. Certified in accordance with the standards of a Class A-2 survey as defined by the code of practice for standards of accuracy of surveys and maps, adopted December 10, 1975 as amended by the Connecticut Association of Land Surveyors, Inc. SURVEYING ASSOCIATES, P.C. 432 MAIN ST. — DANBURY, CT. PAUL M. FAGAN, L.S. 7756," which map is on file in the office of the Town Clerk of the City of Danbury as Map No. 9645 to which reference may be had for a more particular description of the premises. The complaint is drawn in three counts; the first of which asserts title by prescription; the second alleges damages for the destruction of trees;[1] and, the third claims ownership of a prescriptive easement. The plaintiffs obtained their title to Lot 44 by warranty deed from George C. Barnum, Trustee, on February 16, 1959, which deed is recorded in volume 340, page 179 of the Danbury Land Records. The defendants obtained title to their property by virtue of a warranty deed from Kenneth V. Jones and June Keane Jones to Joseph S. Kasmarski, Jr. on November 18, 1982, which deed is recorded in volume 670, page 621 of the Danbury Land Records. CT Page 10526 The legal description of the property according to the respective deeds of the parties indicates that the record title to the disputed parcel is vested in the defendants.
The plaintiff testified that just prior to the purchase of this property he walked the boundaries with the former owner, Mr Barnum. The northerly boundary that was shown to him was the stone wall as shown as the northerly boundary of the disputed piece and there were stakes in that stone wall. From that time on, the plaintiff has believed and claimed the disputed parcel to be his. Beginning in 1962, he began to plant trees on the disputed parcel as well as along the easterly boundary of his property. The planting along the easterly boundary as it extended into and across the disputed piece was to preclude trespassers using his property from other land east of his property to the highway known as Clayton Road so-called. From the time he took title to his piece of property, the plaintiff has stopped anyone attempting to cross it, including the disputed piece and caused them to return to the point from which they entered his property. This was true not only for people attempting to walk across his property but for those people who would ski or sled across it.
One of the defendant's predecessors in title, Richard Tamburo, who took title on January 28, 1965, and the plaintiff recognized the disputed parcel as the plaintiffs' property. The plaintiff maintained the disputed area and Mr. Tamburo maintained his property up to the disputed area but not on it. In addition thereto, at one time, he desired to take stones from the wall along the northerly boundary of the disputed parcel for use on his "own" property. At that time, he requested permission from the plaintiff to do so and that permission was granted. There is no credible evidence to refute the plaintiff's claim that Mr. Tamburo clearly recognized the disputed area as the property of the plaintiff.
In addition to exercising the dominion and control over the disputed parcel noted above, the plaintiff continually cut the grass and raked the leaves on the disputed parcel. In addition thereto, he created a compost pile partly in that same area. This he began in 1964 when he started his garden. The compost pile was created in 1965 and the plaintiff fenced the area to keep dogs out of it. CT Page 10527
The Tamburos suffered a foreclosure on their property and it subsequently became rented. After those tenants left the premises, they were vandalized. On January 15, 1973, a family named Jones purchased the Tamburo property which is now the defendants. By that time, the trees were large enough to preclude that family from entering upon the disputed parcel. They did not use it in any way except to take stones off the wall as Tamburo did and they too were given permission to do so. The defendant, as indicated, obtained title to the property on November 18, 1982. Mathematically, when the defendant took title to the parcel which he now owns, the plaintiffs had been the owners in possession of Lot 44 for some twenty-three years and had clearly and obviously exercised dominion and control over the disputed area from and after 1962, if not before, which once again mathematically is a period in excess of twenty years.
The plaintiffs' experience with the defendant involves the defendant's tying of his dog on the disputed piece or so near thereto that it was able to move over upon it. On each occasion, he was asked or told to move the dog and on each occasion did so. The next incident between the neighbors was when the defendant's young son began to climb some of the trees on the disputed parcel. The defendant told him to keep way from the trees. This exercise of dominion and control over the disputed parcel by the plaintiff continued until such time as the defendant finally had the property surveyed and the surveyor set stakes in the disputed piece showing the boundary line to be along the southerly edge of the disputed piece as opposed to the northerly edge as claimed by the plaintiff. At one time, the defendant asked the plaintiff if he could cut a branch off one of the trees. The plaintiff said he would cut it himself when he got around to it, he never did and the defendant finally did cut it himself.
It was also disclosed that the plaintiff set a television antenna on the northeast corner of the disputed parcel in the year 1960, and it remained in that position until approximately 1978. The defendant made no attempt whatsoever to utilize any part of the disputed parcel until the survey he commissioned himself showed that record title, at least in theory, reposed in him at that time. It is significant to note once again that at least twenty years had elapsed without a challenge to the plaintiffs' claim of CT Page 10528 ownership to the disputed parcel and before the defendant or any of his predecessors in title made any claim whatsoever thereto.
The essential elements of an adverse possession sufficient to create title to the land in a claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right. Ruick v. Twarkins, 171 Conn. 149, 155; Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 462. By such adverse possession, the true owner is barred by a statute of limitations from making entry into the subject land. Section 52-575 of the General Statutes. The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference but by clear and positive proof. Clear and positive proof embodies the same substantive standard as clear and convincing proof. Schulz v. Syvertsen, 219 Conn. 81,91; Huntington v. Whaley, 29 Conn. 391, 398; Robinson v. Myers, 156 Conn. 510, 517; Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36, 42.
For purposes of distinguishing between the acquisition of title to a parcel of land by adverse possession as opposed to the acquisition of an easement by the same legal doctrine, it must be recognized that the former mandates the more stringent or heavier burden of proof while the latter is established by a showing of a fair preponderance of the evidence that the use was adverse. Again, in that instance, there is no reason why the proof required may not be circumstantial as well as direct, nor any reason for requiring in regard to it any greater amount of evidence than is necessary to prove other facts in civil cases. Schulz v. Syvertsen, supra, 91-92; Reynolds v. Soffer, 190 Conn. 184,188; Bradley Fish Co. v. Dudley, 37 Conn. 136, 148.[2]
The fact that a use begins as the result of a grant instead of militating against the adverse character of the use of land emphasizes it. Alling Realty Co. v. Olderman,90 Conn. 241, 247. This is true notwithstanding the fact that the adverse possessor acted under an honest belief that he was not assuming a possession to which he was not legally entitled and that the belief ultimately proves to have been a mistaken one. It is immaterial that the intent was not CT Page 10529 wrongfully motivated but sprang from an honest even though mistaken belief as to land embraced in the deed of acquisition. Loewenberg v. Wallace, 151 Conn. 355, 357-58; Schulz v. Syvertsen, supra, 90.
The court, in applying the law to its findings, is satisfied that the plaintiffs have established by clear and convincing proof that the owner of the disputed parcel had indeed been ousted of his possession and had been kept out uninterruptedly for a period in excess of fifteen years by an open, visible possession by the plaintiff without the license or consent of the owner and certainly under a claim of right. See Ruick v. Twarkins, supra; Robinson v. Myers, supra. Assuming arguendo that the finding cannot be sustained upon the facts, it certainly cannot be successfully argued that at the very minimum, the plaintiff has established an adverse use of the disputed parcel under the lesser burden of proof. In either scenario, the actions of the plaintiff for the time periods previously found position the defendant in a situation where he falls victim to the maxim of too little and too late.
Judgment may enter quieting and settling title to the disputed parcel of property in the plaintiffs; and it is further ordered that a prescriptive easement exists in favor of the plaintiffs over, under, upon and across this parcel and a permanent injunction enjoining the defendant, his agents, servants and/or employees from destroying, defacing or damaging in any way the trees on the formerly disputed parcel of property and from changing the property in any way including without limitation erection of any fence or structure thereon. Judgment may also enter for the plaintiffs on the defendants' counterclaim.
Moraghan, J.