# DONALD B. CRANDALL ET AL. *v.* LUCY BARKER GOULD ET AL.
## (SC 15780)

Borden, Berdon, Norcott, Katz and Peters, Js.

Argued February 20—officially released April 28, 1998

*Edward   B.   O'Connell,*   for   the   appellants (defendants).

*John C. Levanti,* for the appellees (plaintiffs).

*Opinion*

BERDON, J. The dispositive issue in this certified appeal is whether the plaintiffs' use of a private way across the defendants' property occurred under a claim of right so as to allow the plaintiffs to acquire an easement by adverse use across the defendants' property pursuant to General Statutes § 47-37,[1] when the adverse use is alleged to have violated a permanent injunction that prohibits the plaintiffs from interfering with the defendants' use and enjoyment of the property.

The plaintiffs, Donald B. Crandall and Anna Crandall, claim to have acquired an easement across a portion of property belonging to the defendants,[2] Lucy Barker Gould and William S. Keegan, as a result of their adverse, continuous and uninterrupted use of that portion of the defendants' property as a means of ingress and egress to their own property for a period of approximately twenty-nine years. In 1993, the defendants erected a fence that prevented the plaintiffs from persisting in their use of the disputed portion of the defendants' property to access their own property. Thereafter, the plaintiffs filed a complaint seeking to have the defendants' continuing act of obstructing access to their property across the defendants' property enjoined. The trial court rendered judgment in accordance with the recommendations of the attorney trial

---

[1] General Statutes § 47-37 provides: "When acquired by adverse use. No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

[2] On January 9, 1998, this court granted the motion of Gilbert F. and Barbara J. Jordan, to whom the servient estate has been transferred, to be substituted as the defendants in this case. References herein to "the defendants" are to the owners of the property at the relevant times.

referee, concluding that the plaintiffs had not acquired an easement by adverse use across the defendants' property because their use of the private way did not occur under a valid claim of right. The plaintiffs appealed to the Appellate Court, which reversed the trial court's judgment. *Crandall* v. *Gould*, 46 Conn. App. 164, 170, 698 A.2d 934 (1997). Subsequently, we granted the defendants' petition for certification to appeal to this court.[3] *Crandall* v. *Gould*, 243 Conn. 928, 701 A.2d 657 (1997).

The opinion of the Appellate Court sets forth the relevant facts as found by the attorney trial referee. "The plaintiffs . . . own property located at 283 River Road in the town of Stonington. The defendants . . . own property, including a [private way],[4] that abuts the property owned by the plaintiffs.

"A fence was constructed along the [private way] in 1960. In 1960, in the case *Maggs* v. *Crandall*, Court of

---

[3] We granted certification limited to the following issues: "(1) Did the Appellate Court correctly conclude that under the circumstances of this case the plaintiffs had made use of a disputed right-of-way under a claim of right?" and "(2) Under the circumstances of this case did the Appellate Court correctly conclude that the trial court had improperly found that the plaintiffs failed to prove that they had sustained irreparable harm?" *Crandall* v. *Gould*, 243 Conn. 928, 701 A.2d 657 (1997).

Because we resolve the first issue by concluding that the plaintiffs did not use the private way under a valid claim of right during the period in question and, therefore, cannot have acquired an easement by prescription, we do not reach the second issue. In light of our conclusion that the plaintiffs did not acquire an easement, it is unnecessary for us to consider their claim that injunctive relief may be granted without a showing of irreparable harm when the owner of an easement is interfered with or disturbed in his or her attempt to exercise his or her right to the easement.

[4] The private way was created by the selectmen of Stonington in 1918. The instrument creating the private way provides: " 'The subscriber owners of property over which the foregoing private way is laid out hereby agree to claim no damage arising from the laying out of said private way as aforesaid other than the said William S. Maggs is to erect and build and at all times keep in good repair a substantial legal fence or wall.' " *Crandall* v. *Gould*, supra, 46 Conn. App. 166 n.1.

Common Pleas, Docket No. 16945 (November 22, 1960), [William S. Maggs] the defendants' [predecessor] in title, obtained a permanent injunction [hereinafter, 1960 permanent injunction] against Donald Crandall, a plaintiff in this action, enjoining him, his servants and agents 'from interfering with [Maggs'] use and enjoyment of said right-of-way and also from interfering with [Maggs'] construction and maintenance of a substantial legal fence or wall.[5]

"In 1964, the plaintiffs removed a section of the fence. The plaintiffs used the front portion of the [private way] to the opening of the fence as a means of gaining vehicular access to their property from River Road. More recently, disputes between the defendants and the plaintiffs have arisen over the use of the [private way]. A chain-link fence was erected in 1993 along the boundary line between the roadway on the defendants' property and the plaintiffs' lot.

"In 1993, the plaintiffs commenced this action seeking to enjoin the defendants from interfering with their use of the [private way]. They claim that they have a right-of-way by prescriptive easement through use of the [private way] from 1964 to 1993.

"The attorney referee determined that the plaintiffs did not have a right to violate the 1960 permanent injunction order of the Court of Common Pleas. He concluded that the plaintiffs did not have a claim of right to use of the [private way] and, therefore, did not establish an easement by prescription. The attorney referee also concluded that the plaintiffs were not entitled to injunctive relief.

---

[5] The attorney trial referee found that the defendants are the descendants of, and successors in interest to, Maggs. The plaintiffs do not dispute that the defendants are protected by the injunction to the same extent that their predecessors in interest were protected.

"The attorney referee supplemented his decision, granting the plaintiffs' motion to correct in part and denying it in part. He corrected a number of subordinate factual findings, but did not change his conclusions and recommendations. The trial court denied the plaintiffs' exceptions to the attorney referee report, and rendered judgment in accordance with the report as supplemented by his decision on the plaintiffs' motion to correct. [The plaintiffs'] appeal [to the Appellate Court] followed." *Crandall* v. *Gould*, supra, 46 Conn. App. 165–67.

The defendants claim that the plaintiffs could not have acquired an easement by adverse use across the defendants' property because the plaintiffs could not have used the property under a valid claim of right in light of the existence of the 1960 permanent injunction. At trial, the defendants did not contest that the plaintiffs had openly, visibly and continuously used the private way across the defendants' property for the length of the statutorily defined period. Instead, they argued then, as they do now, that the 1960 permanent injunction prohibiting the plaintiffs from interfering with the defendants' use and enjoyment of their property precludes the plaintiffs from asserting a valid claim of right to use the private way. Conversely, the plaintiffs contend that the 1960 permanent injunction does not preclude them from asserting a claim of right to use the private way because a claim of right requires only that the use be unaccompanied by any recognition of the rights of the owner of the servient tenement to prevent the use, and such a lack of recognition of the rights of the defendants to prevent the use was present here.

As a threshold matter, we first must determine whether the plaintiffs' conduct in fact violated the 1960 permanent injunction. The plaintiffs argue that their use of the private way did not violate the specific terms

of the permanent injunction that was issued in 1960 enjoining the named plaintiff, Donald B. Crandall, his servants and agents from interfering with the use and enjoyment of the private way by Maggs, the defendants' predecessor in interest, and from interfering with Maggs' maintenance of a substantial legal fence or wall. The Appellate Court did not address this argument because it concluded that the existence of the permanent injunction did not bar the plaintiffs from asserting that the use occurred under a claim of right. The trial court and attorney trial referee did not address this argument explicitly, but appear to have decided the parties' claims under the assumption that the plaintiffs' use of the private way from 1964 until 1993 constituted a violation of the permanent injunction. We conclude, as a matter of law, on the basis of the facts found by the attorney trial referee, that the plaintiffs' use of the private way from 1964 until 1993 violated the permanent injunction.

The attorney trial referee determined that the permanent injunction barred " 'Donald B. Crandall, and his servants and agents' " from " 'interfering with [Maggs'] use and enjoyment of said right-of-way and also from interfering with [Maggs'] construction and maintenance of a substantial legal fence or wall.' " Although the plaintiffs argue that the injunction enjoined only the named plaintiff from the specified acts, the attorney trial referee determined that the plaintiff Anna Crandall, the named plaintiff's wife, was acting as the named plaintiff's agent under the circumstances of this case. The plaintiffs have not demonstrated that finding to be clearly erroneous. See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 714, 687 A.2d 506 (1997). Therefore, the injunction applies equally to Anna Crandall.

The attorney trial referee further determined that in 1960 a fence was constructed by Maggs; that in 1964,

the named plaintiff caused a break to be made in the fence; and that subsequently, from 1964 until 1993, the plaintiffs commenced using the private way to gain access to their own property. Although the attorney trial referee did not include a finding in his report that the fence that was constructed in 1960 was "substantial," the plaintiffs do not argue that it was not substantial.

We fail to understand, under these circumstances, how the plaintiffs' actions in removing a portion of that fence and resuming their use of the private way could have occurred without interfering with the defendants' right to maintain a fence and their right to use and enjoy the private way. Although the attorney trial referee, whose report was summarily affirmed by the trial court rendering judgment on it, did not expressly conclude in the report that the plaintiffs' conduct violated the injunction, the factual findings that the referee made compel that conclusion. Therefore, on the basis of those findings, we conclude as a matter of law that the plaintiffs' use of the private way from 1964 until 1993 constituted a violation of the permanent injunction.

The plaintiffs argue that even if their use of the private way during the prescriptive period violated the 1960 permanent injunction, they nevertheless have acquired an easement by adverse use because the injunction did not preclude their use from occurring under a claim of right. In determining the effect of the 1960 permanent injunction on the plaintiffs' ability to assert a valid claim of right, the trial court reasoned that, as a matter of law and equity, the plaintiffs could not claim a right to use the private way because such a claim would amount to a claim of right to violate a permanent injunction ordered by the court. The Appellate Court reversed the trial court judgment because it determined that the existence of the injunction supported a finding of a claim of right in that it reinforced the fact that the use

of the private way was not permissive. We agree with the trial court and reverse the judgment of the Appellate Court.

Resolution of this issue requires us to determine the effect of a permanent injunction on the plaintiffs' ability to assert a claim of right so as to acquire a property right pursuant to § 47-37 in the absence of any statutory directive as to the effect to be given to an injunction under that section. The issue constitutes a question of law and, therefore, our review is plenary. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Section 47-37 provides for the acquisition of an easement by adverse use, or prescription. That section provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." In applying that section, this court repeatedly has explained that "[a] party claiming to have acquired an easement by prescription must demonstrate that the use has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." *Westchester* v. *Greenwich*, 227 Conn. 495, 501, 629 A.2d 1084 (1993).

The claim of right requirement has been further explained as follows. Use made under a claim of right means use that is made "without recognition of the rights of the owner of the servient tenement." *Zavisza* v. *Hastings*, 143 Conn. 40, 46, 118 A.2d 902 (1955). "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." *Whiting* v. *Gaylord*, 66 Conn. 337, 344, 34 A. 85 (1895). The use must occur without license or permission and must be "unaccompanied by

any recognition of [the right of the owner of the servient tenement] to stop such use." (Internal quotation marks omitted.) *Westchester* v. *Greenwich,* supra, 227 Conn. 501.

The claim of right requirement serves to ensure that permissive uses will not ripen into easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the servient tenement. 4 R. Powell, Real Property (1997) § 34-10, pp. 34-111 through 34-133. Nevertheless, "it is not necessary in order that a use be adverse that it be made either in the belief or under a claim that it is legally justified." 5 Restatement, Property, Servitudes § 458, comment (d) (1944). Instead, the "essential quality" is that the use not be made "in subordination to those against whom it is claimed to be adverse." Id. "A use which is not made in recognition of and in submission to a present authority to prevent it or to permit its continuance is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it. Thus, one who uses the land of another in defiance of the owner is none the less an adverse user though he admits his lack of legal justification in making the use."[6] Id., § 458, comment (c).

In this case, it is clear that the plaintiffs' use of the private way was not permissive and that it was made without any recognition of the rights of the defendants to prevent it. Ordinarily, these facts would be dispositive to the resolution of whether the plaintiffs acted

[6] In Connecticut and under the Restatement of Property, an exception exists such that if the use began as a result of the mistaken belief that the adverse user was legally entitled to exercise the use, the fact that initially the intent was not wrongful will not prevent the acquisition of the easement by adverse use. The exception exists because "any other rule would frequently limit the acquisition of title by adverse possession to those who deliberately set out to steal the land of another." (Internal quotation marks omitted.) *Schulz* v. *Syvertsen,* 219 Conn. 81, 90, 591 A.2d 804 (1991); see 5 Restatement, supra, § 458, comment (c).

under a claim of right. We conclude, however, that the effect of the 1960 permanent injunction is to produce a different result under these circumstances, where the prescriptive right was acquired only as a result of the violation of that permanent injunction.

It is fundamental that no one has a right to disobey the orders of any court of this state, although the consequences for a violation of a court order will vary with the nature of the order disobeyed. Typically, the violation of an injunction is punished by the imposition of a penalty based upon compensatory damages. *Wehrhane* v. *Peyton*, 134 Conn. 486, 496, 58 A.2d 698 (1948). "There is, however, another means of punishing a violator and that is to deny him any aid from courts of the state where the injunction is granted in the assertion of rights growing out of the transaction in question until he has purged himself of the contempt." Id. In this case, if the plaintiffs were allowed to acquire a prescriptive easement across the defendants' property despite the fact that they were required to violate a permanent injunction in order to satisfy the requirements of the statute authorizing prescriptive easements, the plaintiffs would be rewarded rather than punished for their violation of the court's orders. Although the Appellate Court aptly recognized that by disobeying the injunction the plaintiffs demonstrated a lack of recognition of the rights of owner of the servient tenement as mandated by the claim of right requirement, we cannot overlook the serious consequences that would follow from an interpretation of the claim of right requirement that would condone the violation of permanent injunctions protecting property rights. This court must not, and cannot in good conscience, encourage or condone, through its interpretation of statutes or prior cases, conduct that violates a valid court order for the purpose of facilitating the acquisition of a legal right or for any other purpose. See *Pappas* v. *Pappas*, 164 Conn. 242,

246, 320 A.2d 809 (1973) (where granting of relief would amount to condonation of perjury, court should deny relief to protect its own integrity). We find that these consequences alone provide a compelling reason to conclude that a permanent injunction necessarily operates so as to preclude an enjoined party from asserting a claim of right to an enjoined use in an attempt to acquire an easement by adverse use.

Our conclusion finds further support in the statutory scheme governing easements. General Statutes § 47-37 et seq. The overall statutory scheme makes clear that in enacting § 47-37 the legislature did not intend to provide for the acquisition of prescriptive easements in situations where the party engaged in an adverse use has received formal and adequate notice of the property owner's intent to prevent an easement from being acquired by prescription. Instead, the statutory scheme incorporates a method of preventing the acquisition of an easement by adverse use through the provision of notice to the party engaged in an adverse use. General Statutes § 47-38 provides in relevant part that "[t]he owner of land over which a right-of-way or other easement is claimed or used may give notice in writing, to the person claiming or using the privilege, of his intention to dispute the right-of-way or other easement and to prevent the other party from acquiring the right; and the notice . . . shall be deemed an interruption of the use and *shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter.*"[7] (Emphasis added.) Thus, the legislature

[7] General Statutes § 47-38 provides: "The owner of land over which a right-of-way or other easement is claimed or used may give notice in writing, to the person claiming or using the privilege, of his intention to dispute the right-of-way or other easement and to prevent the other party from acquiring the right; and the notice, being served and recorded as provided in sections 47-39 and 47-40, shall be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter."

General Statutes § 47-39 provides in relevant part: "The notice referred to in section 47-38 shall be served like an original summons in civil actions

has clearly indicated that when formal notice is provided pursuant to § 47-38, no easement may be acquired by adverse use, regardless of how long the use continues after notice is given.

In this case, if we were to conclude that the existence of a permanent injunction enjoining the use of a private way was not sufficient to prevent the acquisition of an easement through adverse use by the enjoined parties, we would be creating an inconsistent and irrational body of law. Such a conclusion would lead to the anomalous result that notice provided pursuant to § 47-38 would suffice to prevent the acquisition of a right by adverse use while a permanent injunction would not suffice for the same purpose. This would be true even though a party that obtains a permanent injunction necessarily will have served notice on the opposing party that will very nearly conform to the requirements of § 47-38 and, in fact, may be superior to that contemplated by § 47-38 due to the greater degree of formality associated with a final court order than with mere notice of intent. We can conceive of no way to reconcile an outcome that would allow a party to assert a claim of right in violation of a permanent injunction, but would not allow a party to assert a claim of right after notice of intent to dispute the easement has been served pursuant to § 47-38. "[C]ourts must discharge their responsibility, in case by case adjudication, to assure that the body of law—both common and statutory—remains coherent and consistent." *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993). Therefore, the overall statutory scheme governing easements, and

on the person claiming or using the way or easement, his agent or guardian . . . . The service shall be endorsed and returned on the original paper, and the notice with the return shall be recorded in the land records of the town in which the land lies, within three months after the service."

General Statutes § 47-40 governs the service of notice under § 47-38 when the owner of the estate to which the easement is claimed to be appurtenant is unknown.

§ 47-38 in particular, reinforces our conclusion that the existence of a permanent injunction precludes an enjoined party from asserting a claim of right to the use enjoined for any length of time following the issuance of the permanent injunction.

We conclude that the existence of the 1960 permanent injunction precludes the plaintiffs from asserting a valid claim of right to use the private way over the defendants' property.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.