[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff herein is the owner of certain properties located within the Swan Lake development located in the Town of Oxford, Connecticut. The lots in question are known as Lots 228 and 229 a/k/a 31 Cherokee Drive and Lot 82. An artesian well existed on Lot 82 and the plaintiff's wife constructed a water pipe across and under Cherokee Drive from Lot 82 to 31 Cherokee Drive. Cherokee Drive is owned by the Swan Lake Association. The plaintiff claims an easement by prescription over Cherokee Drive.
The properties were originally acquired by the plaintiff's wife. Lots 228 and 229 being acquired by her on December 30, 1968 and Lots 81 and 82 on August 22, 1969. They were subsequently quitclaimed to her husband, John M. Hoffer, the plaintiff, on July 17, 1996. The water pipe in question was laid on or about June 3, 1976.
The plaintiff's complaint alleges that at all times the occupation of the easement has been adverse, notorious, continuous and uninterrupted. He is claiming an easement by prescription over the questioned area. In his prayer for relief, he is seeking an easement over, under and upon the area in question for the "use, maintained and repair of the plaintiff's waterline under Cherokee Drive between the premises of lot 82 of the Swan Lake Estates." (See Plaintiff's Prayer for Relief)
The defendant denies that the plaintiff has occupied the property at all times as open, adverse, notorious, continuous and uninterrupted and further denies that the plaintiff is entitled to an easement.
Section 47-37 of the Connecticut General Statutes provides as follows: "No person may acquire a right of way or any other easement from, in, upon or over the land of another by the adverse use or enjoyment thereof unless the use has been continued uninterrupted for 15 years."
"A party claiming to have acquired an. easement by prescription must demonstrate that the use has been open, visible, continuous and uninterrupted for 15 years and made under a claim of right." Crandall v.Gould, 244 Conn. 583, 590 (1998); Westchester v. Greenwich, 227 Conn. 495,501, 629 A.2d 1084 (1993).
"To establish an easement by prescription, it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." Westchester v.Greenwich, supra, 227 Conn. 495, 502 (1993); Whiting v. Gaylord,66 Conn. 337, 344, 34 A. 85 (1895).
"Whether the requirements for such a right have been met in a particular case presents a question for the trier of facts after the nature and character of the use and the surrounding circumstances have CT Page 14636 been considered." Simonds v. Shaw, 44 Conn. App. 683, 687 (1997); Krohnerv. Sybart Associates, Ltd. Partnership, 20 Conn. App. 298, 301,566 A.2d 995 (1999). "The use must occur without license or permission and must be unaccompanied by any recognition [of the right of the owner of the servient tenement] to stop such use." (Internal quotation marks omitted.) Crandall v. Gould, supra, 590-591; Westchester v. Greenwich,
supra, 501.
 "The claim of right requirement serves to ensure that permissive uses will not ripen into easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the servient tenement. Nevertheless, it is not necessary in order that the use be adverse that it be made either in the belief or under a claim that it is legally justified. Instead, the essential quality is that the use not be made in subordination to those against whom it is claimed to be adverse. A use which is not made in recognition of and in submission to a present authority to prevent it or to permit its continuance is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it. Thus, one who uses the land of another in defiance of the owner is nonetheless an adverse user though he admits his lack of legal justification in making the use." (Internal quotations and citations omitted.)
Crandall v. Gould, supra, 591.
The facts disclosed herein show that the properties in question were acquired by the defendant's spouse on December 30, 1968 and August 22, 1969 respectively. (See Exhibits 1 and 4.) The water pipe was laid over and under Cherokee Drive on or about June 3, 1976 as evidenced by the bill for laying the same. (See Exhibit 3.) The lots were then subsequently quitclaimed from Elizabeth Hoffer to her husband John Hoffer on July 17, 1996. (See Exhibit 2.) Exhibit 8 is a survey entitled "Well Easement Pipe Lots 78-84 Osage Road and Cherokee Drive prepared for John M. Harper, December 17, 1997."
The Hoffers decided to improve the property on Cherokee Drive by installing electrical service and brought water to the property from an artesian well located on Lot 82. In order to do so, it was necessary to run a pipe over and under Cherokee Drive to 31 Cherokee Drive. At the time the pipe was laid and while the trench was still open, the Hoffers met at the site with representatives of the Swan Lake Association. Mr. CT Page 14637 Hoffer testified that he informed them he was putting a water pipe under Cherokee Drive and that permission was not explicitly given. Exhibit A, which is a letter from Elizabeth Hoffer to the Board, seems to indicate otherwise.
While there appears to be no formal request for an easement to lay the pipe, the evidence discloses that they met at the side with representatives of the Swan Lake Association. They were told by these same representatives that they could do so as long as the road was returned to its former condition. The testimony of Albert Arcuri, the President of the Association, however, discloses that there is no record of any easement having ever been granted.
However, Mrs. Hoffer, on September 23, 1994, sent a letter to Frederick Camp, the President of the Association, which indicates that there was a verbal agreement in 1976 that, so long as she returned the street to its former condition, she could lay the pipe. Exhibit A reads in part as follows:
 "I am writing to request that you put in writing the verbal agreement we had with reference to the water piping that goes from my well on lots #228 and 229. This piping crosses under Cherokee Road.
 It was agreed, in the spring of 1976 by representatives of the Swan Lake Assoc. Board of Directors, consisting of yourself, Pauline Talmadge and Mike DeSantro, after an "on-site inspection, ' that as long as I returned the road to its original condition, I could have the piping placed under Cherokee Road."
(See Exhibit A.)
It is obvious that at least until September 23, 1994, the Hoffers were acting under the assumption that the right that they presumed they had was a permissive one and that their occupation of that portion of Cherokee Drive was not adverse to that of the Swan Lake Association.
While Mr. Hoffer may have been of the opinion that he was not seeking the permission of the Association, it is obvious that Mrs. Hoffer who was the title holder at the time was of the opinion that she had a verbal agreement with the Swan Lake Association Board of Directors.
It is obvious from the tenor of the letter (Exhibit A) from Mrs. Hoffer to the Board of Directors of the Swan Lake Association that it was her CT Page 14638 opinion that she had permission to lay the water pipe, thus there can be no claim of right that will ripen into an easement by prescription allowing the disputed use to be adverse to the rights of the owner of the servient tenement.
Judgment may enter for the defendant.
The Court
By Curran, J.