## DOMINICK BOCCANFUSO *v.* LOUIS ALLAN CONNER, JR., ET AL.
### (AC 24545)

Lavery, C. J., and Bishop and Dupont, Js.

Argued October 21, 2004—officially released May 31, 2005

*John R. Hall*, with whom was *Edward Kanowitz*, for the appellants-appellees (defendants).

*William Bradley Kellogg*, for the appellee-appellant (plaintiff).

*Opinion*

LAVERY, C. J. The defendants Louis Allan Conner, Jr., and Eulala Conner[1] appeal from the judgment of the trial court declaring that the plaintiff, Dominick Boccanfuso, has acquired via prescription the right to park vehicles in a right-of-way located on the defendants' property. The plaintiff has filed a cross appeal from that part of the court's judgment declaring that the portion of the defendants' property subject to the right-of-way has been diminished by the defendants' adverse use thereof. On appeal, the defendants claim that the court improperly concluded that the plaintiff acquired a prescriptive easement to park in the right-of-way because the requisite fifteen year period of

---

[1] Two mortgagees were named as defendants at trial. Because only the Conners are involved in this appeal, we refer to them in this opinion as the defendants.

adverse use was not established. In his cross appeal, the plaintiff claims for a variety of reasons[2] that the court improperly found that a portion of the right-of-way had been extinguished. We disagree with all of the parties' claims and affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to the appeals. The parties own adjoining residential parcels of land in Westport. The plaintiff owns 3 Madeline Avenue, which is landlocked and located behind the defendants' parcel, 5 Madeline Avenue. The plaintiff's parcel is benefited by an express right-of-way over the defendants' parcel for purposes of ingress and egress. The right-of-way originally was ten feet wide and 37.5 feet long,[3] and is the plaintiff's only means of vehicular access to Madeline Avenue.

Prior to September 19, 1928, both parcels were owned by Theodore M. Haight. On that date, Haight conveyed what is now 3 Madeline Avenue to Sarah S. Moser. The

---

[2] The plaintiff's claim in this regard is comprised of five arguments divided into fifteen subarguments. Faced with the plaintiff's similar style of advocacy at trial, the court in its memorandum of decision observed "that the resolution of this action has been made exponentially more burdensome by the dizzying blizzard of claims, many without merit, contained in the plaintiff's brief. The claims are so numerous as to appear to be gleaned from a table of contents in a digest or treatise."

It is clear from the plaintiff's appellate filings that the court's admonition has not had the desired effect, even though the plaintiff has different counsel on appeal. To expand on the court's sentiment, we note that "[a]ppellate pursuit of so large a number of issues forecloses the opportunity for a fully reasoned discussion of pivotal substantive concerns [by the appellant]. A shotgun approach does a disservice both to this court and to the party on whose behalf it is presented. . . . Naturally, an appellate court is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . ." (Citation omitted; internal quotation marks omitted.) *Labow* v. *Labow*, 65 Conn. App. 210, 211, 782 A.2d 200, cert. denied, 258 Conn. 943, 786 A.2d 430 (2001).

[3] The width of the right-of-way is defined in the deeds forming the chains of title for the subject properties; the parties do not dispute its length.

deed from Haight to Moser created the right-of-way with the following provision: "The grantor also conveys to the grantee a right of way for all lawful purposes over the Northerly ten (10) feet of said Lot #73 [now 5 Madeline Avenue] for the purpose of affording ingress and egress to and from the land hereby conveyed and Madeline Avenue . . . ." In 1929, Moser conveyed 3 Madeline Avenue to Samuel E. Nicholas, who, between August 1, 1948, and June 29, 1956, rented the property to Charles Eaton and Louise Eaton. After January 7, 1950, the Eatons occupied the property under a "bond for deed"[4] from Nicholas, and they subsequently obtained fee title on June 29, 1956. The bond for deed contained a legal description of the property, including a reservation for the right-of-way. The Eatons occupied 3 Madeline Avenue until they sold the property on November 7, 1963. In short, the Eatons resided at 3 Madeline Avenue for a total of fifteen years and approximately three months, first as tenants, then as tenants under a bond for deed and finally as owners.

Charles Eaton owned two vehicles, which he parked in the right-of-way. During the latter years of their residency, the Eatons' three sons also parked their vehicles in the right-of-way. Only the Eatons and occasionally their guests parked there, and nobody ever asked that the vehicles be moved. The court made "no finding . . . as to the parking habits of Charles Eaton's immediate successor in title [but found that] subsequent owners

---

[4] A bond for deed is "an installment sale contract of real property where the buyer takes possession of the property but does not receive fee simple title of the property until a later date." (Internal quotation marks omitted.) *Chomko* v. *Patmon*, 19 Conn. App. 483, 484 n.1, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989). Under a bond for deed, the buyer obtains equitable title upon execution of the contract, while legal title is retained by the seller until the final payment is made. *Francis T. Zappone Co.* v. *Mark*, 197 Conn. 264, 268, 497 A.2d 32 (1985); *Stone & Stone Pension Plan* v. *Alston*, 12 Conn. App. 670, 674, 533 A.2d 898 (1987); Restatement (Third) Property, Mortgages § 3.4, comment (a) (1997).

of the property or their tenants continued to park their vehicles in the right-of-way." The plaintiff purchased 3 Madeline Avenue on October 29, 1998.

The defendants purchased 5 Madeline Avenue on May 12, 1978. All deeds in their chain of title state that the property is subject to the right-of-way. Sometime in the 1970s, either the defendants or their predecessors in title built a deck and planted shrubbery along the right-of-way, encroaching within its ten foot width. On December 11, 1992, the defendants' home was destroyed by fire. They rebuilt the premises, including the deck, and reoccupied the property by 1994.

The plaintiff brought this action in September, 1999, and in the operative complaint alleged that (1) the defendants unlawfully were obstructing the right-of-way with their deck and shrubs, and (2) through his predecessors in title he had acquired a prescriptive easement for the purpose of parking within the right-of-way. The plaintiff sought damages, an injunction restraining the defendants from interfering with his use of the right-of-way for passage and parking, and a declaratory judgment as to the existence of the claimed easement for parking.

The defendants in their answer raised two special defenses and a two count counterclaim. In their first special defense, they alleged, in essence, that the presence of the deck and shrubs within the right-of-way for more than fifteen years operated to extinguish that portion of the right-of-way that the deck and foliage occupied. In the first count of their counterclaim, the defendants sought, inter alia, an injunction restraining the plaintiff from using the right-of-way other than for ingress and egress and a declaratory judgment regarding the scope of the right-of-way.[5]

[5] In the defendants' second special defense, they alleged that the deed by which the plaintiff took title to 3 Madeline Avenue excluded, by reference to a survey map, the portion of the right-of-way occupied by the defendants' deck. In the second count of their counterclaim, they sought monetary

Following a trial to the court, on June 5, 2003, the court issued a comprehensive memorandum of decision addressing the parties' claims. It concluded that the plaintiff had established, by a preponderance of the evidence, the necessary elements to establish a prescriptive easement for parking motor vehicles in the right-of-way. Specifically, the court found that the Eatons, between 1948 and 1963, had made open, visible and continuous use of the right-of-way for parking motor vehicles under a claim of right, and that such use applied to establish the requisite fifteen year prescriptive period even though for some portion of it, the Eatons were only tenants, rather than owners, of 3 Madeline Avenue. It found further that the Eatons' adverse use inured to the plaintiff as their successor in title and, accordingly, that "the plaintiff's use of the right-of-way includes the right to park motor vehicles thereon." The court granted a declaratory judgment so stating.

The court next considered whether a portion of the right-of-way had been extinguished by the presence of the defendants' deck and shrubs within the right-of-way. It concluded that an easement could be partially extinguished through adverse use by the servient estate holder for the requisite period and that the defendants' deck and shrubbery constituted such use. Specifically, the court found that the defendants' incursion into the right-of-way with their deck and shrubbery was made continuously and under a claim of right for fifteen years. Consequently, the portion of the right-of-way that the deck and shrubbery occupied[6] had been extinguished. The court granted a declaratory judgment so stating.

compensation for damage to their foliage caused by the plaintiff. The court's findings as to these claims are not subjects of these appeals.

[6] Relying on a survey map that the plaintiff had introduced into evidence, the court found that the deck encroached about one foot into a portion of the length of the right-of-way and that the shrubbery encroached approximately two to three feet into a shorter portion.

The court denied both parties' requests for injunctive relief. It noted that there was no evidence that the defendants had sought to encroach any further on the right-of-way than by the deck and shrubbery and that pursuant to the court's previous findings, the plaintiff's use of the right-of-way was not limited to ingress and egress.

Following the issuance of the court's judgment, both parties filed motions to reargue or to correct the judgment. In their motion, the defendants claimed that the court had misapplied the holdings of *Deregibus* v. *Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553 (1936) (*Deregibus I*), and *Deregibus* v. *Silberman Furniture Co.*, 124 Conn. 39, 197 A. 760 (1938) (*Deregibus II*), to the facts at hand and also took issue with the court's factual findings in this regard. In his motion, the plaintiff largely disagreed with the court's factual findings and claimed that the court improperly had found certain of his arguments abandoned due to inadequate briefing. On August 1, 2003, the court issued a second memorandum of decision in response to the parties' motions. It disagreed with the defendants' interpretation of the *Deregibus* cases and declined to alter its findings that the defendants had obstructed the right-of-way under a claim of right and on a continuous, uninterrupted basis.

Thereafter, the defendants appealed and the plaintiff cross appealed from the court's judgment. Additional facts will be provided as necessary.

I

The defendants raise one claim of error on appeal. They argue that the court's conclusion that the plaintiff had proven the requisite elements for a prescriptive right to park vehicles in the right-of-way was improper because the necessary fifteen year period of adverse use was not established. According to the defendants, under our Supreme Court's holdings in *Deregibus I*

and *Deregibus II*, the period during which the Eatons occupied 3 Madeline Avenue either as tenants (August 1, 1948, through July 6, 1950) or as contract purchasers under the bond for deed (July 7, 1950, through June 29, 1956) should not have been included in the court's determination of the length of adverse use. We disagree.

As noted by the court, "[e]asements for a specified purpose, whether express or otherwise, may be prescriptively enlarged by additional uses over time." See generally annot., 110 A.L.R. 915 (1937). To establish such prescriptive enlargement, a party with an express easement must show that it used the easement in a manner not contemplated by the terms of the grant, and that it did so openly and visibly, continuously and uninterruptedly, and under a claim of right for the prescriptive period, here, fifteen years. See *Crandall* v. *Gould*, 244 Conn. 583, 590, 711 A.2d 682 (1998); *Sachs* v. *Toquet*, 121 Conn. 60, 66, 183 A. 22 (1936); see also General Statutes § 47-37. These elements must be proven by a fair preponderance of the evidence. *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 704–705, 829 A.2d 8 (2003). Once established, a prescriptive easement appurtenant to the benefited property generally runs to all subsequent owners thereof. *Faught* v. *Edgewood Corners, Inc.*, 63 Conn. App. 164, 175, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001). Accordingly, a party may establish a prescriptive right by proving the adverse use by a predecessor in title for the requisite amount of time. See id., 168–69. Here, the court's conclusion that a prescriptive easement had been established rested on its findings regarding use of the right-of-way for parking by the plaintiff's predecessors in title, the Eatons, first as tenants and then as owners of 3 Madeline Avenue.

Regarding our standard of review, whether the right to use an easement for a particular purpose has been acquired prescriptively involves questions of fact; *Oak*

*Leaf Marina, Inc.* v. *Ertel,* 23 Conn. App. 91, 97, 579 A.2d 568, cert. denied, 216 Conn. 827, 582 A.2d 206 (1990); to be determined by the trier "after the nature and character of the use and the surrounding circumstances have been considered." (Internal quotation marks omitted.) *Faught* v. *Edgewood Corners, Inc.,* supra, 63 Conn. App. 168. "When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous." Id. When an appellant claims, however, that a "court's conclusion that a prescriptive easement existed was inconsistent with its subordinate factual findings"; *Gallo-Mure* v. *Tomchik,* supra, 78 Conn. App. 704; the following standard of review applies: "[Findings of fact] that there had been an open, visible, continuous and uninterrupted use for fifteen years under a claim of right, as found by the trial court, are not reviewable unless the subordinate facts on which they are based are legally and logically inconsistent [with] or are insufficient to support the conclusion that they exist." (Internal quotation marks omitted.) Id.

In *Deregibus I,* our Supreme Court considered the question of whether a plaintiff tenant's adverse use of a passageway[7] could be considered that of his landlord, the owner of the property, which would be benefited by a claimed easement over the passageway, for purposes of partially establishing the prescriptive period.[8]

---

[7] The passageway ran between premises occupied by the plaintiff and premises owned by the defendant, and it was located partially on each. The plaintiff claimed a right-of-way over the portion located on the defendant's property.

[8] The tenant in the *Deregibus* cases later became owner of the benefited property himself. Consequently, the more precise question before the court was whether he could tack his initial use as tenant to his subsequent use as owner for purposes of establishing the prescriptive period. If his use as tenant had inured to his landlord, it could then be tacked to the tenant's subsequent use as owner because of the privity of title between the two created by the conveyance. See 1 Restatement (Third), Property, Servitudes § 2.17, comment (1), p. 283 (2000); annot., 72 A.L.R.3d 648, 660-62, §§ 4, 5

The trial court assumed that it could and found the elements of a prescriptive easement established. *Deregibus I*, supra, 121 Conn. 635–36. On appeal, our Supreme Court reversed the judgment and remanded the case for a new trial.

The court first noted the principle that "where a lease to a tenant includes in the land leased that which the landlord subsequently claims to have acquired [prescriptively] by virtue of his tenant's occupancy, the occupation by the lessee is that of the lessor for the purposes of the statute." Id., 638. Applying that principle, it explained that in the case before it, "[u]nless the lease is effective to cover the [claimed] right of way, the plaintiff's adverse use of the way under it cannot enure to the benefit of the lessor." Id. The court then held the principle inapplicable because there was nothing in the trial court's findings to show that any of the plaintiff's leases had included a right-of-way over the defendant's land. Id., 639. It concluded, however, that an explicit lease provision describing the right-of-way was not the only way to prove its inclusion in the leased premises. Rather, "the tenant's possession may be the possession of the landlord although the lease did not expressly include the land in question, where the landlord has represented to the tenant that such land was in the lease, or the landlord knew the tenant was occupying it and assented thereto, or there were other circumstances justifying the implication that it was occupied under and by virtue of the lease . . . ." (Citation omitted.) Id. Stated simply, "the land in question [may be] within either the express or implied terms of the lease . . . ." (Citation omitted.) Id. Because there were no findings by the trial court to support either an express or implied lease provision including the claimed

---

(1976). The plaintiff in the *Deregibus* cases thus was in a position similar to the Eatons, who first occupied 3 Madeline Avenue as tenants, then later as owners.

right-of-way, the judgment was reversed and the case remanded for further proceedings. Id., 639–40.

On remand, additional evidence was submitted to the court. Specifically, it was shown that the disputed right-of-way was the only means of ingress and egress between the street and the plaintiff's garage at the rear of his property. *Deregibus II*, supra, 124 Conn. 40. Moreover, the plaintiff's former landlord testified that "he understood and has always understood and believed that he had a right of way over the adjoining property now of the defendant, for the purpose of driving into the rear of the property, and that he would not have bought the property if he did not have such a right of way; that during the period that he was owner no one ever complained or objected to him because of the use made of the passageway by his tenants; that he visited the premises frequently and both he and [his coowner] knew that their tenants, and others occupying the premises as subtenants, were making use of this way, neither of them objected to such use, and they knew it was necessary in order to get to the rear of the premises." Id., 40–41. The court found these facts sufficient to warrant a finding that the use of the tenants was that of the landlords for purposes of tacking. Id., 41. The defendant appealed, arguing that none of the plaintiff's leases included a specific reference to a right-of-way. Id.

The Supreme Court reiterated its holding from *Deregibus I* that such "inclusion need not necessarily be expressed; it suffices if it is impliedly included." Id. It noted that "[w]hether or not the easement here in question was within the leases was a question of fact, to be determined in the light of the circumstances, including the use made of it"; id.; and that the facts found on retrial were "sufficient to establish that the right of way was considered by both parties to the leases to be included in them." Id., 41–42. The court cited specifically the findings that the landlord would

not have purchased the property without use of the right-of-way and that the landlord knew of and assented to the use of the way by all of the tenants. It also relied on "inescapable inference[s]" which flowed from those factual findings. Id., 42. Namely, given the purpose and manner of use of the premises by the tenants, they would not have rented the premises were it not understood that the right-of-way was included in their leases. Id. Further, the understanding of and belief in the right-of-way by both landlord and tenants "could not have been other than fostered and confirmed by the acquiescence, without objection or complaint, by the defendant and its predecessors in title . . . ." Id. In sum, the circumstances as testified to were sufficient to establish the existence of an implied lease term encompassing the disputed right-of-way.

The defendants in the present case argue that the requirements established by the *Deregibus* holdings have not been satisfied because there was no evidence that Nicholas, the fee owner of 3 Madeline Avenue and landlord to the Eatons until 1956, authorized the Eatons to park in the right-of-way during their tenancy. They claim that "[t]here was no evidence introduced at trial of any lease, agreement or understanding whereby . . . Nicholas authorized parking in the right of way" and that the testimony of members of the Eaton family, on which the court relied, in fact compels the opposite conclusion. Essentially, the defendants argue that the court found an implied lease term for parking based merely on the Eatons' use of the right-of-way for parking, which finding lacked sufficient support under *Deregibus I.* They also claim that the court misinterpreted the *Deregibus* cases.

The following additional procedural history is pertinent. In their motion to reargue filed subsequent to the issuance of the court's memorandum of decision, the defendants argued that the court had misconstrued the

holdings of the *Deregibus* cases.[9] They urged that, pursuant to those holdings, the plaintiff was required to show not only that general use of the right-of-way, i.e., for ingress and egress, was contemplated by the Eatons' lease agreement, but also use of the right-of-way *specifically for parking*. In its memorandum of decision on the motions to reargue, the court disagreed. According to the court, "[t]hat the enhanced use of the way for parking may not have been mentioned in the lease is of no moment. The significant fact is that the right-of-way was included in the Eatons' lease, and their use and occupancy of that way was that of Nicholas. *Deregibus I* supports, rather than prohibits, the creation of a prescriptive use by the Eatons." The court noted further that the defendants had not proffered any rationale for the rule for which they advocated and that the court's research had not uncovered any support for it, either in Connecticut or other jurisdictions.

On appeal, the defendants' argument that the facts found by the court do not satisfy the requirements established by the *Deregibus* cases is intertwined with their claim that the court misconstrued those requirements. Just as at trial, however, they have not cited any case that directly supports the proposition for which they

---

[9] The court had summarized the *Deregibus* holdings and applied them as follows: "[T]he court finds, based on a reasonable inference, that the right-of-way was included in the premises leased to the Eatons. Unlike the situation in *Deregibus*, there is no question that the owner of 3 Madeline Avenue had an express easement over the right-of-way. Since 3 Madeline Avenue is landlocked, it is utterly unlikely that the right-of-way was not included, impliedly if not expressly, within the leasehold premises. The daily open and notorious use of the right-of-way by Charles Eaton, and later his sons, within a few feet of the home on 5 Madeline Avenue, without complaint by the owner of that property, adds further circumstantial corroboration to the fact that the right-of-way was included in premises leased to the Eatons. Accordingly, their use was functionally that of the owner of 3 Madeline Avenue. Because the Eatons parked in the right-of-way daily for fifteen uninterrupted years, their use alone establishes the prescriptive easement for parking."

advocate, but rather they rely solely on their own interpretation of the rule of the *Deregibus* cases as applied to a concededly distinct legal issue.[10] Because those cases concerned only the establishment of a right-of-way and not, as here, the prescriptively enhanced use of an existing express right-of-way, they do not answer definitively the question that the defendants have raised. Moreover, our extensive research has not uncovered any case or commentary addressing the matter. Nevertheless, we conclude that the defendants' claim must fail because, even under the rule for which they advocate, the facts as found by the court are sufficient to support its ultimate conclusion that the Eatons' use of the right-of-way for parking while they were tenants should be tacked to their use as owners to establish the requisite prescriptive period.[11]

---

[10] The defendants in their appellate brief concede that "[t]he issue is admittedly more complicated where it involves parking in an existing right-of-way versus crossing a neighbor's property for ingress and egress," but argue, without support to any additional legal authority, that "the analysis is the same."

[11] Although we need not decide which is the correct rule, we note that the question presented is a difficult one without an obvious answer. The underlying rationale for the rule in the *Deregibus* cases is that a tenant's entry onto a third party's property absent authorization from his landlord amounts to a trespass. See *Deregibus I*, supra, 121 Conn. 639. Because a landlord cannot be held liable for his tenant's unauthorized trespass, the landlord conversely cannot claim the benefit of the tenant's unauthorized use when claiming an easement by prescription. See id.; see also *Ammer* v. *Arizona Water Co.*, 169 Ariz. 205, 210, 818 P.2d 190 (App. 1991). Thus, to determine the correct rule in the circumstances presented by this case, we would be required to decide whether parking on a right-of-way over which an express grant exists for ingress and egress amounts to a trespass.

Insofar as "[a] consent restricted to entry [on the land of another] for a particular purpose confers no privilege to be on the land for any other purpose"; 1 Restatement (Second), Torts § 168, comment (b) (1965); such parking arguably would be a trespass, making necessary the landlord's authorization of parking in order for tacking of the tenant's use to be proper. But see *Hagist* v. *Washburn*, 16 Conn. App. 83, 88, 546 A.2d 947 (1988) ("[S]everal courts have considered the question of whether 'driveway easements' or 'right-of-way for ingress and egress' allow for parking on the burdened land by the owner of the dominant estate. See annot., 37 A.L.R.2d 944 [1954]. Courts generally have construed such easements to allow this

Specifically, the court found that Charles Eaton owned two vehicles, one for business use and one for personal use, and, because he could drive only one at a time, there was "virtually always" a vehicle parked in the right-of-way. As the court held in *Deregibus II*, it is an "inescapable inference from the facts found as to the purposes and manner of use"; *Deregibus II*, supra, 124 Conn. 42; of the right-of-way by Charles Eaton that he would not have rented 3 Madeline Way had he not understood that he was authorized to park his vehicles there, one of which he depended on for his livelihood.

The court also credited the testimony of three of the Eatons' children[12] that, despite this constant parking, there never were any complaints from the owner of the defendants' property and that as far as the children knew, their parents never asked for or received permission from anyone to park in the right-of-way, nor did they mention to the children that parking there "was at the sufferance of the owner of 5 Madeline Avenue." As the court reasoned in *Deregibus II*, such acquiescence without objection by the servient estate holder could only have fostered and confirmed an understanding, by both landlords and tenants, of the existence of a right to park. *Deregibus II*, supra, 124 Conn. 42. The court credited further one sibling's testimony that "she always considered the right-of-way to be the driveway" and another's "that he felt his family and their guests had a right to park in the right-of-way." In other cases

provided that the vehicles are not parked in such a manner as to interfere with the use of the property by the owner of the servient estate. Id., 946–47 . . . ." [Citation omitted.]). Given the conflict of authority, we are hesitant to decide this issue in the absence of comprehensive briefing of it by the parties and findings by the court as to whether the Eatons' parking interfered with the use of 5 Madeline Avenue.

[12] Two of the Eaton children testified at trial, and one provided deposition testimony. Charles Eaton and Louise Eaton were deceased at the time of trial, and Nicholas also was not available to testify.

analyzing this issue, tenants' beliefs as to their rights under their leases have been considered probative evidence of implicit lease terms.[13] See, e.g., *Ammer* v. *Arizona Water Co.*, 169 Ariz. 205, 211, 818 P.2d 190 (Ariz. App. 1991); *Toto* v. *Gravino*, 37 Del. Ch. 431, 434, 144 A.2d 237 (1958).

The court in its decision also acknowledged the physical condition of the plaintiff's property, namely, that there was "little room . . . for parking and then only close to the house."[14] Limitations arising from the physical characteristics or location of leased property are circumstantial evidence that the tenant's use of adjacent property was implied in the lease. See, e.g., *Jerry Brown Farm Assn., Inc.* v. *Kenyon*, 119 R.I. 43, 50–51, 375 A.2d 964 (1977) (listing "physical appearance of the claimed easement in relation to the leased property" among relevant circumstantial evidence and citing tenant's testimony that road, over which easement was claimed, "was the only access he had to the leased parcels"); *Toto* v. *Gravino*, supra, 37 Del. Ch. 434 (holding that, where alley was only means of access from front to rear of leased premises, "it is difficult to imagine a tenant leasing [the] property without fairly concluding that the use of the alley was intended to be covered by

---

[13] We disagree with the claim made by the defendants in their reply brief that the court's crediting of the testimony of the Eaton children that "to the best of their knowledge, neither of their parents had an agreement with anyone relating to the use of the right-of-way for the parking of motor vehicles" amounts to a conclusive finding that such an agreement was not *impliedly* within their lease terms. Rather, that testimony reasonably establishes only that the children were unaware of any explicit agreement. Furthermore, insofar as that finding was made in the context of the court's analysis of whether the Eatons parked in the right-of-way under a claim of right, it is fairly read as establishing the children's lack of knowledge of any agreement with the owners of 5 Madeline Avenue, not with the landlord.

[14] The Eaton children testified that it was not possible to drive a vehicle past the end of the right-of-way because it would interfere with the steps that were the only means of access to the house and also because it would be difficult to then exit the vehicle.

the lease"); *Murray* v. *Fuller*, 82 Cal. App. 2d 400, 406, 186 P.2d 157 (1947) (holding that, where passageway over defendant's property was sole method of accessing parking area on plaintiff's property and parking area was "substantial benefit" that plaintiff's tenants used daily for many years, "it was reasonable that the parties should take it for granted that the tenants would . . . have the right to use it"). Here, the fact that there was insufficient space to park on the plaintiff's property is indicative of an implied right to park on the right-of-way. On the basis of the foregoing, we conclude that the circumstantial evidence presented and credited by the court was sufficient to establish that parking in the right-of-way was impliedly within the Eatons' lease terms.

Regarding the defendants' repeated assertion that the *Deregibus* cases require that there be "positive evidence" of authorization for the Eatons to park in the right-of-way, although in *Deregibus II* the landlord's testimony was part of the evidence presented, there is nothing in those decisions establishing such a requirement in every case. Rather, the court indicated that the authorization at issue could be found in "either the express *or implied* terms of the lease . . . ." (Citation omitted; emphasis added.) *Deregibus I*, supra, 121 Conn. 639; see also *Deregibus II*, supra, 124 Conn. 41. By its very nature, an implication must be proven circumstantially. Furthermore, as examples of the type of proof that might support a finding of an implied lease term, the court suggested evidence that "the landlord has represented to the tenant that such land was within the lease, *or* the landlord knew the tenant was occupying it and assented thereto, *or there were other circumstances justifying the implication that it was occupied under and by virtue of the lease* . . . ." (Citation omitted; emphasis added.) *Deregibus I*, supra, 121 Conn. 639; see also *Andrzejczyk* v. *Advo System, Inc.*,

146 Conn. 428, 433, 151 A.2d 881 (1959) ("[s]uch a right need not necessarily be expressed; it can be implied *from all the circumstances*" [emphasis added]). In this case, given the passage of time since the Eatons' occupancy of 3 Madeline Avenue and the unavailability of key witnesses, the evidence necessarily fell within the third category described in *Deregibus I.*

Generally speaking, "there is no legal distinction between direct and circumstantial evidence so far as probative [value] is concerned." (Internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.,* 266 Conn. 12, 43, 836 A.2d 1124 (2003). "In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Internal quotation marks omitted.) *Hanes* v. *Board of Education,* 65 Conn. App. 224, 231 n.7, 783 A.2d 1 (2001). "Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case such as this where the applicable standard is that of [a preponderance of the evidence]." (Internal quotation marks omitted.) *In re Cheyenne A.,* 59 Conn. App. 151, 159, 756 A.2d 303, cert. denied, 254 Conn. 940, 761 A.2d 759 (2000).

We conclude that the facts found by the court had support in the evidence and, therefore, they were not clearly erroneous. See *Faught* v. *Edgewood Corners, Inc.,* supra, 63 Conn. App. 168. Further, because the court's finding that the elements of a prescriptive right to park had been established is legally and logically consistent with those subordinate findings, there is no basis to disturb it on appeal. See *Gallo-Mure* v. *Tomchik,* supra, 78 Conn. App. 704.

II

We turn to the issues raised in the cross appeal. The plaintiff claims first that the court improperly found that the defendants had proved all of the elements

required to establish the extinguishment of a portion of the right-of-way. He argues that the elements necessary to extinguish an easement adversely are different from those necessary to acquire an easement adversely. The plaintiff claims that the court employed the wrong legal test for extinguishment of an easement, and also that the defendants did not plead and prove all of the elements of what is, according to the plaintiff, the proper test.[15] We disagree.

In support of this argument, the plaintiff directs our attention to our Supreme Court's decision in *American Brass Co.* v. *Serra*, 104 Conn. 139, 132 A. 565 (1926). At the conclusion of that opinion, the court, quoting from a treatise, included the following statement of the law: "An easement, once created, is not extinguished by the mere acts of the servient owner in themselves, however adverse they may be to the enjoyment of the easement by the dominant proprietor, and however clearly they may indicate the desire and intention of the servient owner to put a stop to the use of his land. *There must be added to those acts other circumstances showing an intention on the part of the dominant owner to abandon or release the easement.*" (Emphasis added; internal quotation marks omitted.) Id., 151, quoting R. Minor & J. Wurts, Real Property (1910) § 108. On the basis of the foregoing statement, the plaintiff claims that to establish that the right-of-way was partially extinguished under a theory of adverse use, the defendants needed to plead and to prove not only that they used a portion of the right-of-way adversely for the requisite period, but also that the plaintiff intended to release or to abandon the right-of-way. After a review of the entire opinion in *American Brass Co.*, the treatise

---

[15] The plaintiff also argues that the court improperly decided that extinguishment of the easement had occurred via the defendants' adverse use when the defendants had pleaded extinguishment via adverse possession. We address this claim in part IV.

cited and other pertinent resources, we conclude that the previously quoted statement of law must be read in the context of the case and the treatise in which it appears, and that the requirements so stated do not apply literally to every case in which the extinguishment of an easement is claimed.

First, it is clear that abandonment by the dominant estate owner and adverse use by the servient estate owner are separate and distinct methods by which an easement may be extinguished. See 4 R. Powell, Real Property (2004) §§ 34.20 [2] (discussing abandonment of easements and noting "a confusion of thought as to the two different methods of extinction, namely, abandonment and adverse user"), 34.21 [1] (discussing termination of easements by prescription); R. Minor & J. Wurts, supra, §§ 105 (discussing easements extinguished by abandonment), 108 (discussing easements extinguished by adverse acts of servient owner). In the case cited by the plaintiff, both theories were advanced, and the court, before concluding its decision with the aforementioned quotation, in fact discussed separately each theory as applied to the situation at hand. See *American Brass Co.* v. *Serra*, supra, 104 Conn. 148–49 (discussing abandonment); id., 149–51 (discussing release by prescription).

Second, in the treatise quoted by the court in *American Brass Co.*, the quotation at issue is set forth as a general statement of the law and is followed by three illustrations. The second illustration, which also is quoted in part in *American Brass Co.*, provides: "So, also, if the servient owner should by adverse acts lasting through the prescriptive period obstruct the dominant owner's enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement, and thus extinguish it, provided his adverse acts constitute a legal interference with the other's right and would give

rise to a right of action by him." R. Minor & J. Wurts, supra, § 108; see also *American Brass Co.* v. *Serra*, supra, 104 Conn. 146. Apparently, as to this example, the "other circumstances showing an intention on the part of the dominant owner to abandon or release the easement"; (internal quotation marks omitted) *American Brass Co.* v. *Serra*, supra, 151; contemplated by the general rule are inferred through proof of the elements of reverse prescription. As indicated by the court in *American Brass Co.*, to prove extinguishment of an easement by prescription, the rights and acts of the respective parties are considered toward the end of establishing that "the owners of the servient tract, by adverse use of a notorious, exclusive and hostile character, obstructed and excluded the owners of the dominant tract *so as to form a basis for an inference of a grant, releasing the easement*, by an owner of the dominant tract to the owner of the servient tract." (Emphasis added.) Id., 150.

Third, our more recent cases addressing the issue of extinguishment of an easement by prescription have not required explicit pleading and proof of an intention of the dominant estate holder to abandon or to release the easement. See *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, 20 Conn. App. 380, 382, 567 A.2d 389 (1989); *Russo* v. *Terek*, 7 Conn. App. 252, 255, 508 A.2d 788 (1986). The additional treatises which we have consulted similarly lack that requirement. See 4 R. Powell, supra, § 34.21 [1]; H. Tiffany, Real Property (3d Ed. 1939) § 827. For the foregoing reasons, we conclude that the plaintiff's first claim of error must fail.

### III

The plaintiff also claims that the court applied the wrong standard of proof to the defendants' claim that a portion of the right-of-way had been extinguished. Subordinate to that claim, he argues that under Con-

necticut law presently, extinguishment of an easement may occur through either adverse use or adverse possession and, because the defendants pleaded a theory of adverse possession,[16] the burden applicable to that cause of action, namely, clear and positive proof, should have been used. The plaintiff argues further that if Connecticut law does not require exclusive possession as a necessary element to extinguish an easement held by another, the law should be changed. To this end, the plaintiff suggests that particular precedent of our Supreme Court "should be overturned" to require exclusive possession, in other words, to require that extinguishment of an easement be accomplished via adverse possession rather than adverse use. Alternatively, he urges that we overturn our own case law on extinguishment of easements through adverse use to make the applicable burden of proof that of clear and convincing evidence.[17] We reject all of the plaintiff's claims.

"The issue of whether the court held the parties to the proper standard of proof is a question of law. When issues in [an] appeal concern a question of law, this court reviews such claims de novo." (Internal quotation

---

[16] We address the plaintiff's claim regarding the defendants' pleadings in part IV.

[17] The plaintiff also devotes several pages of his brief to a tangential discussion of cases from other jurisdictions that elaborate on what is required, under particular factual scenarios, to establish that a servient owner's use of its property is adverse to an easement holder such that the use operates to extinguish the easement. See *Titcomb* v. *Anthony*, 126 N.H. 434, 492 A.2d 1373 (1985); *Castle Associates* v. *Schwartz*, 63 App. Div. 2d 481, 407 N.Y.S.2d 717 (1978). Those cases are illustrative of the general proposition that the type of use that will be considered sufficiently adverse to extinguish an easement prescriptively necessarily differs from that required to create an easement prescriptively. Specifically, "[b]ecause the servient tenant, as long as he or she does not interfere with the right of user, may use his or her land in any manner desired, an act that serves to start the prescription period in the servient tenant's favor must be one clearly wrongful as to the owner of the easement." 4 R. Powell, supra, § 34.21 [1]. Because the applicability of the cited cases to the present claim is not readily apparent, we will not discuss them further.

marks omitted.) *Litchfield Asset Management Corp.* v. *Howell,* 70 Conn. App. 133, 139, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002).

Although at times, litigants and the courts conflate the concepts and underlying elements of adverse use and adverse possession, it is clear that these are distinct doctrines and equally apparent that the proper theory under which to establish the extinguishment of an easement is through adverse use by the servient estate holder. See 2 Restatement (Third) Property, Servitudes § 7.7, comment (b) (2000) ("[a]dverse uses meeting the requirements of §§ 2.16[18] and 2.17[19] that unreasonably interfere with easements or violate covenants, if continued throughout the prescriptive period, extinguish the benefit of the servitude to the extent of the adverse use"); 5 Restatement (First) Property, Servitudes § 506 (1944) ("[a]n easement is extinguished by a use of the servient tenement by the possessor of it . . . provided (a) the use is adverse as to the owner of the easement and (b) the adverse use is, for the period of prescription, continuous and uninterrupted"); 4 R. Powell, supra, § 34.21 [1] ("The servient owner can extinguish an easement in whole or in part by adverse uses continued for the prescriptive period. As in the case of the creation of an easement by prescription . . . the uses must be adverse, continuous, uninterrupted, and for the prescriptive period.").

Accordingly, Connecticut cases addressing extinguishment of easements have analyzed the issue under

[18] Section 2.16 of 1 Restatement (Third) Property, Servitudes (2000), provides in relevant part that "[a] prescriptive use of land that meets the requirements set forth in § 2.17 creates a servitude. A prescriptive use is . . . (1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed . . . ."

[19] Section 2.17 of 1 Restatement (Third) Property, Servitudes (2000), provides in relevant part that "[a] servitude is created by a prescriptive use of land, as that term is defined in § 2.16, if the prescriptive use is (1) open or notorious, and (2) continued without effective interruption for the prescriptive period. . . ."

the theory of adverse use. See, e.g., *American Brass Co.* v. *Serra*, supra, 104 Conn. 149–50; *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, supra, 20 Conn. App. 382; *Russo* v. *Terek*, supra, 7 Conn. App. 255. We have examined the cases cited by the plaintiff in support of his claim that Connecticut law also allows for the extinguishment of an easement by adverse possession; see *Goodwin* v. *Bragaw*, 87 Conn. 31, 86 A. 668 (1913); *Gemmell* v. *Lee*, 59 Conn. App. 572, 757 A.2d 1171, cert. denied, 254 Conn. 951, 762 A.2d 901 (2000); and conclude that they are inapposite, insofar as each involved a claim of adverse possession seeking title to the *fee* of the land over which an easement existed, which claim, if successful, could operate indirectly to extinguish the easement. See H. Tiffany, supra, § 827, p. 397 ("[i]f there is adverse possession sufficient to divest a fee simple title to land, it will also operate to extinguish an easement in such land"); cf. 2 Restatement (Third) Property, Servitudes § 7.7, comment (c) (2000) ("[a]dverse possession of the . . . servient estate [may] affect the servitudes burdening . . . the property [if] the adverse possessor also does something to . . . terminate the servitudes"). There is no such claim in this case.

Because the rule used in Connecticut is the correct one, we decline the plaintiff's invitation to change it. In any event, *American Brass Co.* was decided by our Supreme Court and, as should be obvious, we are not free to cast aside its holding. "As an intermediate appellate court, [i]t is not . . . within our province to overrule or discard the decisions of our Supreme Court." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 54 Conn. App. 11, 13 n.1, 734 A.2d 571 (1999), aff'd, 259 Conn. 855, 792 A.2d 774 (2002).

As the plaintiff's argument that the court applied the wrong standard of proof was premised on the correct-

ness of his claim that the court employed the wrong theory of extinguishment, the argument necessarily fails. Nevertheless, the plaintiff also requests that we overturn one of our own cases in which we confirmed that the correct standard of proof for a claim of extinguishment of an easement through adverse use was the preponderance of the evidence standard and that we instead require the higher standard applicable in adverse possession cases. In *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, supra, 20 Conn. App. 380, we rejected an identical claim, explaining that there was "no logical reason to have different standards of proof for the establishment and extinguishing of easements by adverse use. In neither case is the acquisition of title to land at issue, a situation that logically calls for the higher 'clear and positive proof' standard." Id., 385–86. The plaintiff's argument, in essence, that the extinguishment of an easement results in an expansion of the servient owner's property rights and thus "involves title to real estate," provides us with no basis to question our reasoning in *Public Storage, Inc.* Accordingly, we will not revisit the holding of that case.[20] For the foregoing reasons, the plaintiff's second claim of error must fail.

IV

The plaintiff's next claim is that the court improperly concluded that the defendants had extinguished a portion of the right-of-way by adverse use because, in one of their special defenses and in their counterclaim, they alleged extinguishment by adverse possession. He argues that the court's ruling resulted in a material

[20] In any event, "this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc. Before a case is assigned for oral argument, the chief judge may order, on the motion of a party or suo moto, that a case be heard en banc. Practice Book § 70-7 (a)." *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999).

variance between the allegations in the defendants' pleadings and the judgment after trial. The plaintiff claims further that he "was prejudiced in maintaining his defense, misled by the defendants' pleadings or surprised by the trial court." In particular, he insists that in advocating against the defendants' special defense at trial, he was relying on their being held to a more exacting standard of proof and that the court's use of the preponderance of the evidence standard thus necessarily prejudiced him. We are not persuaded.

The following additional procedural history is relevant to this issue. In their first special defense, the defendants alleged partial extinguishment of the plaintiff's easement by averring, in pertinent part, that "the Plaintiff, and his predecessors in title, have been ousted from their use of the area where [the defendants' foliage is or has] been located . . . and the Plaintiff, and his predecessors in title, have been kept out of the [area occupied by the foliage] uninterruptedly for over fifteen years, under a claim of right by Defendants' open, visible and exclusive possession without license or consent of Plaintiff or Plaintiff's predecessors in title."[21] The first special defense also included a similarly worded allegation concerning the area occupied by the defendants' deck. The plaintiff argues that the defendants, in using this language, raised a defense of adverse possession with the concomitant evidentiary burden of clear and convincing evidence.

"The purpose of [a pleading] is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . A [party] may not allege one cause of action and recover upon another. Facts

[21] This allegation basically is repeated in the defendants' second counterclaim, which is not at issue in this appeal.

found but not averred cannot be made the basis for a recovery." (Citations omitted; internal quotation marks omitted.) *Francis* v. *Hollauer*, 1 Conn. App. 693, 694–95, 475 A.2d 326 (1984).

"To set aside a judgment on the basis of a variance between the pleadings and the proof, the variance must be material in a way which is essential to the cause of action claimed. . . . Under our practice, an immaterial variance is disregarded. Practice Book 178 [now § 10-62]." (Citation omitted.) *Francis* v. *Hollauer*, supra, 1 Conn. App. 695. A variance is material if the plaintiff was prejudiced in countering the special defense, surprised by the defendants' proof or misled by the allegations in the special defense. See id.

Easements established through adverse use, "unlike title gained by adverse possession, do not require exclusive use by the claimant; [id., 695–96]; and the burden of proof is by preponderance of the evidence rather than by clear and convincing evidence [as] required [to establish] adverse possession. *Schulz* v. *Syvertsen*, 219 Conn. 81, 91, 591 A.2d 804 (1991)." *Gallo-Mure* v. *Tomchik*, supra, 78 Conn. App. 706 n.4. In this case, the court decided that the defendants had extinguished a portion of the plaintiff's easement via adverse use. In rejecting the plaintiff's claim that the defendants' pleading mandated analysis of the case as one alleging adverse possession, the court found that the defendants' use of the word "exclusive" amounted to unnecessary surplusage and that the plaintiff had not been misled or prejudiced because of its inclusion. We agree.

First, when replying to the defendants' first special defense, the plaintiff pleaded, inter alia, estoppel and waiver. In raising those issues, the plaintiff alleged certain actions by the defendants and alleged further that those actions precluded the defendants from arguing "that a portion of the right of way and the plaintiff['s]

prescriptive easement to park motor vehicles within that portion of the right of way area have themselves *been lost via prescription.*" (Emphasis added.) In so pleading, the plaintiff acknowledged that the defendants were raising a defense of extinguishment via adverse use. See *Klein* v. *DeRosa*, 137 Conn. 586, 591, 79 A.2d 773 (1951) ("word 'prescription' is appropriate to connote the acquisition of an easement by adverse user"). As such, he is hard-pressed to claim surprise.

Second, insofar as the defendants did not actually use the term "adverse possession" or cite the statutory provision applicable to an adverse possession claim; see General Statutes § 52-575; it cannot be said that their factual allegations unequivocally contemplated that cause of action. In contrast, in *Francis* v. *Hollauer*, supra, 1 Conn. App. 693, we reversed the trial court's finding of a prescriptive easement where the pertinent count of the plaintiffs' complaint specifically had alleged "actual, visible, exclusive, open and notorious *adverse possession* of the property for more than fifteen (15) years." (Emphasis added; internal quotation marks omitted.) Id., 694; cf. *Klein* v. *DeRosa*, supra, 137 Conn. 591 (holding no material variance when plaintiffs alleged " 'title by prescription' " and court found easement, because "[i]f the plaintiff had been claiming that she had acquired a title in fee to the land, the proper words for her to have used would have been 'adverse possession' "). Moreover, in the context of a claim of extinguishment of an easement, as compared with establishment of an easement, a factual averment of exclusivity is not obviously inaccurate,[22] as it is the adverse user's own land that he is alleging to be using adversely.[23]

---

[22] Indeed, in rejecting the plaintiff's claim of prejudice arising from the defendants' pleadings, the court observed that "the word 'exclusive' aptly describes the nature of the defendants' possession of that part of the easement occupied by the deck."

[23] We note also that the term "exclusive" is not wholly foreign to the law of prescriptive easements, although the term's use in that context causes

Third, the plaintiff does not direct us to, and our review has not disclosed, anything in the trial record or transcript to demonstrate the prejudice he claims to have suffered due to the purported discrepancy between the defendants' pleadings and proof. We have examined his comprehensive trial brief and observe that in arguing that the right-of-way had not been partially extinguished, he cited, with only one exception, cases involving extinguishment via adverse use. In *Francis v. Hollauer*, supra, 1 Conn. App. 693, the defendants demonstrated that they had been prejudiced by the plaintiff's pleadings in that at trial, they "focused their defense on the exclusion factor which distinguishes adverse possession from a prescriptive easement." Id., 696. Here, the plaintiff's argument as to extinguishment raised several points but did not include any analysis regarding exclusivity.

In sum, the plaintiff makes no claim that his trial strategy was thwarted in any particular manner, but instead requests that we presume he was misled and prejudiced because he was relying on the defendants' being held to a higher standard of proof than they ultimately were. Insofar as the plaintiff argued in his trial brief that extinguishment had not been proven under either theory even if the lower standard is applied, we

confusion because it connotes something different from what it connotes in the law of adverse possession. See 1 Restatement (Third) Property, Servitudes § 2.17, comment (g) (2000). "In adverse-possession doctrine, the exclusivity requirement describes the behavior of an ordinary possessor and serves to give notice to the owner. In servitudes cases, however . . . the requirement does not mean that the use is such as to exclude others, or, that the user in fact has excluded others from the servient estate. Instead . . . it simply requires that the user have acted independently of rights claimed by others. To the extent the exclusivity requirement serves any function in prescription cases, it is redundant." Id.; see, e.g., *Klein* v. *DeRosa*, supra, 137 Conn. 590–91 ("[u]se [of party claiming easement] need be exclusive only in the limited sense that her right shall not depend for its enjoyment upon a similar right in others"); *Missionary Society* v. *Coutu*, 134 Conn. 576, 582, 59 A.2d 732 (1948) (same).

decline that request. For the foregoing reasons, the plaintiff's claim that he was prejudiced by the defendants' pleadings is unavailing.

V

The plaintiff also claims that the court improperly found that the defendants' deck was partially situated on the right-of-way for at least fifteen years or that it was situated in the exact same position in the right-of-way for at least fifteen years. He argues that, at the time this action was instituted, the existing deck had been there only since the summer of 1993 and, therefore, there was insufficient evidence to establish the extent of any encroachment for the years prior to that. According to the plaintiff, "[t]o acquire an easement prescriptively, the location of the use during the prescriptive period must be reasonably defined" and, in this case, that requirement was not satisfied. We disagree.

The court made the following additional findings relating to the bounds of the right-of-way during the prescriptive period, stated alternatively, as to what portion of the way had been encroached on by the defendants' deck. By 1975, a previous deck was constructed in the location of the present one, and by 1983 it was enlarged to become five feet in width. That deck was demolished in the summer of 1993 and reconstructed immediately thereafter in approximately the same position. The deck as it presently exists is twenty feet long and five feet wide. On the basis of the foregoing, the court found that "the defendants' deck has been maintained at a width of five feet for fifteen years preceding the commencement of this action, specifically since 1983 . . . ."[24] The plaintiff argues that the court's find-

---

[24] The court noted the brief hiatus in the deck's existence while construction was ongoing and concluded, for several reasons, that it did not destroy the continuous and uninterrupted nature of the defendants' use of the area the deck occupied. The plaintiff does not contest that conclusion on appeal.

ing as to the location of the deck prior to 1993 was speculative and without basis because there were no maps in evidence showing the deck's position during that period, and the other available evidence was not consistent. Specifically, he contests the court's findings as to the width of the deck.

"A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty." (Internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 167, 783 A.2d 1226 (2001), quoting *Kaiko* v. *Dolinger*, 184 Conn. 509, 511, 440 A.2d 198 (1981). "However, slight or immaterial changes or deviations in a portion or portions of a way do not prevent the acquisition of a right-of-way by adverse use so long as the way remains substantially the same throughout the prescriptive period." 25 Am. Jur. 2d 544–45, Easements and Licenses § 51 (2004). The exact location of a right-of-way presents a question of fact for the trial court; *Gaffney* v. *Pesce*, 144 Conn. 17, 19, 126 A.2d 926 (1956); such that we will not disturb the court's finding as to the bounds of the way unless it is clearly erroneous. *Faught* v. *Edgewood Corners, Inc.*, supra, 63 Conn. App. 168.

Here, in finding that the width of the deck since 1983 was five feet, the court relied on testimony of the defendants as corroborated by testimony of the plaintiff's brother. The plaintiff directs us to contrary evidence, namely, a field card from the town assessor's office that is based on a 1984 inspection, depicting the deck as four feet in width, and he notes further that there were no maps from the relevant period in evidence that the court could use to determine the position of the deck prior to 1993. Accordingly, he claims that the testimony on which the court relied was not trustworthy and that at best, the testimony rendered "the location of the deck and any encroachment on the right-of-way

prior to 1993 indefinite, if not left to speculation." We disagree.

"Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 498, 740 A.2d 408 (1999). "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Smith Brook Farms, Inc.* v. *Wall*, 52 Conn. App. 34, 37, 725 A.2d 987 (1999).

Here, the court was faced with conflicting evidence and, in choosing to credit the testimony over the field card, acted well within its province. To accept the plaintiff's claim that the testimony was untrustworthy would require us to reevaluate that testimony, which we cannot do. A trial court is in the best position "to determine issues of credibility because it observed the demeanor of witnesses, and we have but the dry record of their testimony"; *Gallo-Mure* v. *Tomchik*, supra, 78 Conn. App. 715; before us. Regarding the point that there were no maps in evidence from the relevant period, although such maps would have been helpful, the plaintiff provides no authority that they are absolutely necessary, and we reject that proposition. Because the court's finding as to the bounds of the right-of-way had support in the evidence, we conclude that it was not clearly erroneous.

## VI

The plaintiff last claims that the court improperly found that the defendants' deck and shrubbery were

built, planted or maintained under a claim of right. He argues that the defendants, through their conduct, impliedly recognized the easement rights of the plaintiff's predecessors in title over the entire right-of-way, including the portion occupied by the deck and shrubbery, and thus the claim of right requirement was unmet. We disagree.

In the case of a claimed extinguishment of an easement via prescription, "[i]f the servient owner . . . should by adverse acts lasting through the prescriptive period obstruct the dominant owner's . . . enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement. *Russo* v. *Terek*, supra, [7 Conn. App.] 255." (Internal quotation marks omitted.) *Public Storage, Inc.* v. *Eliot Street Ltd. Partnership*, supra, 20 Conn. App. 382. "The use must occur without license or permission and must be unaccompanied by a recognition of [the right of the owner of the dominant tenement] to stop such use. . . . The claim of right requirement serves to ensure that permissive uses will not ripen into [the extinguishment of] easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the [dominant] tenement. . . . Whether the requirements for [a claim of] right have been met in a particular case presents a question of fact for the trier of facts. . . . The trier's determination of facts will be disturbed only when those findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 860, 786 A.2d 436 (2001). When we review a court's factual determinations as to the elements of adverse use, those determinations "will be disturbed only in the clearest of circumstances, where [the court's] conclusion could not reasonably be reached." (Internal quotation marks omitted.) *Smith Brook Farms, Inc.* v. *Wall*, supra, 52 Conn. App. 36.

In support of his claim, the plaintiff relies on the following evidence presented at trial. Testimony and a photograph indicated that, in either 1997 or 1998, when 3 Madeline Avenue was owned by Christopher England and Emily England, Louis Conner and Christopher England spread " 'beach pebbles' " on the surface of the right-of-way and somewhat beyond its northern boundary, i.e., the boundary opposite the one over which the deck was encroaching, and lined the area adjacent thereto with cobblestones.

Another photograph in evidence depicted Eulala Conner measuring the distance between the deck and shrubbery on the southern boundary of the right-of-way and a split rail fence running alongside the northern boundary just north of the cobblestones. The photograph is captioned "April '99, ten feet."

The plaintiff argues, in essence, that the foregoing evidence demonstrates unequivocally that the defendants shifted the right-of-way to the north[25] in recognition that they had encroached along its southern boundary and that such recognition indicates conclusively that the encroachment was not made under a claim of right. According to the plaintiff, the defendants' conduct "militates against any inference that their state of mind was that of a possessor under a claim of right" and "can only reasonably be interpreted as an accommodation made by the defendants to the occupants of 3 Madeline Avenue" in implied recognition of "the easement holder's . . . superior rights to pass over that part of the right-of-way where the defendants' deck and trees were located." We disagree.

To begin, the evidence previously described is susceptible of any number of inferences, and we cannot fault the court for not drawing the one advanced by

[25] The defendants apparently own, in addition to the lot on which 5 Madeline Avenue is situated, the lot immediately north of the right-of-way.

the plaintiff. Moreover, even if we accept the plaintiff's interpretation of the evidence, it still would not operate to preclude a finding that the defendants' use of a portion of the right-of-way was made under a claim of right. As explained by our Supreme Court in discussing the claim of right requirement: " '[I]t is not necessary in order that a use be adverse that it be made either in the belief or under a claim that it is legally justified.' 5 Restatement, Property, Servitudes § 458, comment (d) (1944). Instead, the 'essential quality' is that the use not be made 'in subordination to those against whom it is claimed to be adverse.' Id. 'A use which is not made in recognition of and in submission to a present authority to prevent it or to permit its continuance is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it. Thus, one who uses the land of another in defiance of the owner is none the less an adverse user though he admits his lack of legal justification in making the use.' Id., § 458, comment (c)." *Crandall* v. *Gould*, supra, 244 Conn. 591.

Here, there is no indication that the defendants or their predecessors in title built their deck and planted their shrubbery in the right-of-way with the license or permission of the plaintiff's predecessors in title and, thus, in recognition of and in subordination to their authority to permit or to prevent it. Even if the defendants, by engaging in the conduct previously described, were admitting that they were not legally justified in their encroachment, their use nevertheless was adverse. Accordingly, we conclude that the plaintiff's last claim of error is without merit.

To summarize, the court correctly tacked the years of the Eatons' tenancy at 3 Madeline Avenue to those of their ownership to establish the requisite period of use for a prescriptive right to park in the right-of-way because the evidence presented was sufficient to sup-

port a finding that the right to park was impliedly included in their lease. Moreover, in finding that the easement had been partially extinguished, the court employed the proper legal test and the correct standard of proof. Specifically, it was not necessary that abandonment or release of the easement by the plaintiff, or exclusive use of the easement by the defendants, be proven. Rather, the defendants needed to establish, by a fair preponderance of the evidence, only that they used the easement adversely, openly and visibly, continuously and uninterruptedly, and under a claim of right for fifteen years. Additionally, because the plaintiff has not shown that he was misled, surprised or prejudiced, the judgment will not be set aside on the basis of a claimed material variance between the defendants' pleadings and the court's conclusions. Finally, the court's findings as to the bounds of the diminished right-of-way and the nature of the defendants' encroachment, i.e., that it was made under a claim of right, have support in the record and, therefore, were not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.